## AMES, (DWIGHT v.)

[See Dwight v. Ames, Case No. 4,214.]

---

## AMES, (FOSTER v.)

[See Foster v. Ames, Case No. 4,965.]

---

## Case No. 326.

### AMES v. HOWARD et al.

[1 Sumn. 482;[1] 1 Robb, Pat. Cas. 689.]

Circuit Court, D. Massachusetts. Oct. Term, 1833.

PATENTS FOR INVENTIONS — CONSTRUCTION — SURPRISE — APPEAL — OBJECTIONS WAIVED — NEW TRIAL.

1. Patents and specifications annexed thereto should be construed fairly and liberally, and not subjected to any over-nice or critical refinements.
[Cited in Davoll v. Brown, Case No. 3,662; Wilson v. Rousseau, 4 How. (45 U. S.) 708; Aiken v. Bemis, Case No. 109; Hogg v. Emerson, 6 How. (47 U. S.) 486; Winans v. Denmead, 15 How. (56 U. S.) 341; Goodyear Dental Vulcanite Co. v. Gardiner, Case No. 5,591; Hamilton v. Ives, Id. 5,982; Milligan Glue Co. v. Upton, Id. 9,607; Thomas v. Shoe Mach. Manuf'g Co., Id. 13,911.]
See Ryan v. Goodwin, [Case No. 12,186;] Blanchard v. Sprague, [Id. 1,518.]

2. Where an invention is so loosely and inaccurately described in the specification, that the court cannot, without resorting to conjecture, gather what it is, then the patent is void; but if the court can clearly see the nature and extent of the claim, however imperfectly and inartificially it may be expressed, the patent is good.

3. A patent contained the following words in the description of the invention: "I do not claim the felting, vats, rollers, presses, wire-cloth, or any separate parts of the above described machinery or apparatus, as my invention; what I do claim as new, and as my invention, is the construction and use of the peculiar cylinder above described, and the several parts thereof in combination for the purpose aforesaid." Held, that it is not the cylinder alone, or its several parts, which are claimed per se, but they are claimed in their actual combination with the other machinery, to make paper.
[Cited in Davoll v. Brown, Case No. 3,662; Wilson v. Rousseau, 4 How. (45 U. S.) 708;

Hovey v. Stevens, Case No. 6,746: Hogg v. Emerson, 6 How. (47 U. S.) 486; Brooks v. Fiske, 15 How. (56 U. S.) 223; Stover v. Halsted, Case No. 13,509.]
See Prouty v. Ruggles, 16 Pet. [41 U. S.] 336; Ryan v. Goodwin, [Case No. 12,186;] Prouty v. Draper, [Id. 11,446;] Pitts v. Whitman, [Id. 11,196;] Washburn v. Gould, [Id. 17,214.]

4. Semble, that no previous notice or claim of a right to the exclusive use of an invention is necessary, to enable a patentee to maintain an action for an alleged violation of his patent-right.
[Cited in Brown v. Piper, 91 U. S. 41.]

5. It is the practice of this court, in all cases of surprise at the trial, by new matter proving a ground material to either party, and clearly made out by affidavit, to postpone or continue the cause. If the party interested, however, elects to go on with the cause, relying upon other matters, he is understood to waive the matter of surprise, and he cannot take his chance with the jury, and, if unsuccessful, then move the matter as a ground for a new trial.

6. A new trial is not granted upon mere cumulative evidence.
[Cited in Wiggin v. Coffin. Case No. 17,624; Aiken v. Bemis, Id. 109.]

7. The defendants cannot put in new rebutting evidence to affidavits of the plaintiff, offered in reply to those first offered by the defendants.
[8. Cited in Smith v. Downing, Case No. 13,036, to the point that "the avoidance of patents for claiming too much is of frequent occurrence, and needs no explanation as to the reasons for it, when an applicant is so improvident or unjust to others as to claim for himself more than he invented, and the credit or profit of which belongs to others rather than to himself."]

[9. Cited in Brown v. Piper, 91 U. S. 41, to the point that it is fatal to a patent that it consists in the application of an old process to a new subject, without any exercise of the inventive faculty, and without the development of any new or original idea.]

[10. Cited in Seymour v. Osborne, 11 Wall. (78 U. S.) 555, to the point that a combination of two or more old elements in a machine, producing a new and useful result, is patentable.]

At law. Case [of John Ames against Charles Howard and others] for an infringement of a patent-right for a new and useful improvement in the machinery for making paper. The specification annexed to the patent contained the following summary of the invention, as claimed by the patentee: "The drawing hereto annexed is to be taken and considered as a part of this specification. But it is to be understood, that I do not claim the felting, vats, rollers, presses, wire-cloth, or any separate parts of the above described machinery or apparatus, as my invention. And I hereby declare, that what I claim, as new and as my invention, is the construction and use of the peculiar kind of cylinder above described, and the several parts thereof in combination for the purposes aforesaid." The cylinder here referred to is particularly described in the specification, and it is there stated to be partly immersed and used in the vat containing the paper pulp, "having one end of the cylinder

---

[1][Reported by Hon. Charles Sumner.]

close to the side of the vat, which forms a covering therefor." And in another part of the specification it is stated: "One end of the cylinder thus formed is to be covered, and made water-tight by a copper or other sufficient covering, and the other end, uncovered, is to be brought and kept in close contact with the side of the vat or reservoir aforesaid, which is to be so adapted to it, as to form a covering water-tight for that end of the cylinder, which while it revolves is below the top of the vat or reservoir." The specification then proceeds to describe the mode in which the water, draining through the cylinder, is to be conducted off through a hole in the side of the vat, which covers the open end of the cylinder. It was not disputed at the trial, that the cylinder was not capable of, nor intended for, any distinct use separate from the vat; and that to make paper on it, it was indispensable, that it should be placed in the vat in the manner above described. Plea, the general issue, with notice of special matter.

At the trial it was contended by the defendants, that the true construction of the patent was, that the plaintiff claimed only the cylinder, and the several parts thereof, in combination with each other, as his peculiar invention. The court thought otherwise; and declared to the jury, "that the patent is for the construction and use of the peculiar kind of cylinder, and the several parts thereof, in combination with the other parts of the machinery, for the purpose of making paper. It is for the combination, and not for the separate parts thereof. It is not for the peculiar structure and use of the cylinder alone, as the invention of the plaintiff; but it is for it in, and as a part of, the combination. Nor is it alone for the several parts of the cylinder, in actual combination by themselves with each other; but in the combination with other parts of the machinery to produce paper."

At the trial the cause was argued by William Bliss and Rand for the plaintiff, and by George Bliss and Fletcher for the defendants. The jury found a verdict for the plaintiff, for $412.50 single damages.

A motion was afterwards made by the defendants for a new trial, the grounds of which appear in the opinion of the court, and was argued by Rand for the plaintiff, who cited Smith v. Brush, 8 Johns. 84; Pike v. Evans, 15 Johns. 210; Williams v. Baldwin, 18 Johns. 489; Spong v. Hog, 2 W. Bl. 802; Ford v. Tilly, 2 Salk. 653; Watson v. Sutton, 1 Salk. 272; Cooke v. Berry, 1 Wils. 98; Gist v. Mason, 1 Term R. 84; Standen v. Edwards, 1 Ves. Jr. 134.

Fletcher, for defendants, cited Smith v. Brush, 8 Johns. 84; Pike v. Evans, 15 Johns. 213; Guyott v. Butts, 4 Wend. 579; Warren v. Hope, 6 Greenl. 480.

STORY, Circuit Justice. The first ground of the motion is on account of a supposed misconstruction of the patent of the plaintiff by the court. And the question now is, whether the direction of the court was right in point of law. Patents for inventions are not to be treated as mere monopolies odious in the eyes of the law, and therefore not to be favored; nor are they to be construed with the utmost rigor, as strictissimi juris. The constitution of the United States, in giving authority to congress to grant such patents for a limited period, declares the object to be to promote the progress of science and useful arts, an object as truly national, and meritorious, and well founded in public policy, as any which can possibly be within the scope of national protection. Hence it has always been the course of the American courts, (and it has latterly become that of the English courts also,) to construe these patents fairly and liberally, and not to subject them to any over-nice and critical refinements. The object is to ascertain, what, from the fair sense of the words of the specification, is the nature and extent of the invention claimed by the party; and when the nature and extent of that claim are apparent, not to fritter away his rights upon formal or subtile objections of a purely technical character.

Now, let us see, what is the invention, as claimed by the plaintiff in the specification in this case. I agree, that if he has left it wholly ambiguous and uncertain, so loosely defined, and so inaccurately expressed, that the court cannot upon fair interpretation of the words, and without resorting to mere vague conjecture of intention, gather what it is, then the patent is void for this defect. But if the court can clearly see, what is the nature and extent of the claim, by a reasonable use of the means of interpretation of the language used, then the plaintiff is entitled to the benefit of it, however imperfectly and inartificially he may have expressed himself. And for this purpose we are not to single out particular phrases standing alone, but to take the whole in connexion. The plaintiff begins by stating negatively, what he does not claim as his invention; and this may well help us to ascertain, what he does claim. He says he does not claim "the felting, vats, rollers, presses, wirecloth, or any separate parts of the above described machinery or apparatus," as his invention. Now, among the above described machinery is the cylinder, and the several parts thereof. The cylinder therefore may fairly be deemed a separate part of the machinery, for it constitutes a part separable in its nature, and distinct in its formation, though adapted to a particular mode of use. He then proceeds to say, "What I do claim, as new and as my invention, is the construction and use of the peculiar cylinder above described, and the several parts thereof in combination for the purpose aforesaid." Now the defendants read this language, as if the words were, I claim the construction and

use of this peculiar cylinder, and I claim the several parts thereof in combination with each other to form a cylinder for the purpose of making paper. Let us see, whether this is consistent with giving a due effect to all the words used, and with the antecedent negative declarations of the plaintiff. He before has said, that he does not claim, as his invention, any of the separate parts of the machinery; therefore it is very clear, that he does not claim the separate parts of the cylinder. But then, it is said, he claims these parts in combination with each other. But these parts in combination with each other constitute neither more nor less than the cylinder itself; so that upon this construction the words, "and the several parts thereof in combination," are mere repetition and tautology, and have no distinct meaning. The claim is read exactly, as if these words were struck out. Certainly no court of justice is at liberty to strike out any words, which are sensible in the place, where they occur, and are capable of a distinct application. We are to give, if practicable, effect to all the words, as containing a distinct expression of the intention of the party. Besides; upon this interpretation of the language, the party does not claim the construction and use of the cylinder as his own, but the application of it to a particular purpose, as his own. It requires no commentary to establish, that the application of an old thing to a new use, without any other invention, is not a patentable contrivance A man, who should use a common coffee-mill for the first time to grind peas, could hardly maintain a patent for it. A man, who should for the first time card wool on a common cotton carding-machine, would find it difficult to establish an exclusive right to the use of it for such a purpose. So that this construction of the words of the specification could hardly be presumed to express the intention of the party; for then he would not claim the thing, but a particular use of the thing for a particular purpose. The plaintiff in the present case claims more than a mere use; he claims the construction of this peculiar cylinder, and the several parts of it. And how does he claim them "in combination"? In what manner? In combination with each other? No; but "in combination for the purpose aforesaid;" that is, for the purpose of making paper. The grammatical connexion of the passage, then, requires that we should read it, that he claims, as his invention, the cylinder itself, (as well as the several parts thereof,) in combination for the purpose of making paper. It is not then the cylinder alone, or its several parts, which are claimed per se; but they are claimed in their actual combination with the other machinery to make paper. In this view of the clause full effect is given to all the words, and the sense is at once natural and consistent. My judgment, therefore, is, that the construc-

tion given by the court at the trial is correct; and that, as matter of law, there is no error in it.

The next objection is necessarily out of the case; for the comment attributed to the court was, upon a suggestion of the defendants' counsel, immediately withdrawn from the jury by the court; and the whole matter of fact contained in Gilpin's deposition, as well as its credibility, was left entirely open and free to the jury. I cannot say; that they have misunderstood it; or that they have not drawn the right conclusion deducible from it. It was a matter peculiarly within their province; and the ample comments on Gilpin's testimony, at the trial, by the counsel on both sides, sufficiently evinced, that it was in some parts confused and unsatisfactory, and susceptible of different interpretations.

The next objection is, that in point of law the plaintiff is not entitled, without some previous notice, or claim, to maintain this action under his patent against the defendants, for continuing the use of the machines erected and put in use by them before the patent issued. This objection cannot prevail. I am by no means prepared to say, that any notice is in cases of this sort ever necessary to any party, who is actually using a machine in violation of a patent-right. But it is very clear, that in this case enough was established in evidence to show, that the defendants had the most ample knowledge of the original patent taken out by the plaintiff in 1822, and of which the present is only a continuation, being grounded upon a surrender of the first for mere defects in the original specification. Whoever erects or uses a patented machine, does it at his peril. He takes upon himself all the chances of its being originally valid: or of its being afterwards made so by a surrender of it, and the grant of a new patent, which may cure any defects, and is grantable according to the principles of law. That this new patent was so grantable is clear, as well from the decision of the supreme court in Grant v. Raymond, 6 Pet. [31 U. S.] 218, as from the act of congress of the 3d of July, 1833, c. 162. There is no pretence to say that the defendants were bona fide purchasers without any knowledge or notice of any adverse claim of the plaintiff under this original patent; and the damages were by the court expressly limited to damages, which accrued to the plaintiff by the use of the machine after the new patent was granted to the plaintiff. Without doubt the jury conformed in their verdict to this direction of the court.

The other original objections may be passed over without notice, and indeed are insupportable in point of law. But another ground for a new trial has been since filed, founded partly upon surprise at the trial, and partly upon the discovery of new evidence applicable to the point, stated at the

trial, which constitutes the matter of surprise. It came out in evidence on the trial, in the course of the cross examinations, that the original cylinder constructed by the plaintiff had bars of wood, instead of brass; and one or more of the witnesses asserted, that the brass bars were substituted for wood after the grant of the original patent in 1822. This was explicitly denied by other witnesses on behalf of the plaintiff, who asserted, that the brass bars were substituted before the patent. Upon this point the parties were at issue at the trial; and it was made a strong ground of defence. No application was made to the court by the defendants for a postponement or continuance of the cause for the purpose of a more full and thorough examination of the point, or to search for farther testimony. The uniform practice of this court is, in all cases of surprise at the trial by new matters, forming a ground important to either party, and clearly made out by affidavit, to postpone or continue the cause. And if the party interested makes no such application, but elects to go on with the cause, relying upon his other strength to sustain his claim or defence, he is understood to waive the matter of surprise; and he cannot be permitted to take his chance with the jury, and, if unsuccessful, then to move the matter, as a ground for a new trial. The purposes of justice would be defeated and not advanced by any different course. And courts, which adopt a different rule, act upon the ground, that in their own modes of trial and practice the party has no opportunity to postpone or continue the cause; but is compellable to proceed in the trial. Upon this short ground, therefore, the objection of surprise is removed from the case. But it is by no means clear, that the matter so waived was, in point of law, a good ground of defence to the action. That depended upon the fact, whether the plaintiff made it by his specification a constituent part of his invention, that the bars should be of brass, and not of wood; for if they might be made of either, consistently with his general claim, then there was no objection to the patent in this respect. Now, the court was by no means satisfied at the trial, that such was in fact the claim of the plaintiff. But, for the purposes of the trial, the evidence was left to the jury, as if it constituted a complete ground of defence. The jury so acted upon it; and, having decided against it, as matter of fact, it would be a strong ground for the court to interfere now upon a mere doubt, whether the plaintiff's claim had in point of law such an extent or not. I do not state this with any other view, than to say, that it is a matter still sub judice, upon which my mind is not so clear, as to induce me to grant a new trial, merely with a view to open anew the discussion of it. But, then, as to the new evidence offered, what is its

nature? It is merely cumulative; and the settled practice of this court is never to grant a new trial upon mere cumulative evidence, where there is no other ground of objection to the verdict. That point has been fully considered in the case of Alsop v. Commercial Ins. Co., at this term, [Case No. 262.] But it has been long since established in the habitual course of proceedings of the court. The counter affidavits, however, offered on behalf of the plaintiff, go to establish strong cumulative proofs the other way. And under such circumstances, the court will always decline to interfere; because it will not undertake to measure the weight of the new testimony on either side, or send the parties again to litigation upon the chances of a verdict, upon new conflicting evidence. The defendants have asked, if they may put in new rebutting evidence to the affidavits of the plaintiff, offered in reply to those first offered by themselves. Certainly not. They must present their whole case at once to the court; and not lead it on through a series of confirming and rebutting proofs, thus protracting the cause to an unreasonable extent.

There is another view, which may properly be taken of this point. The special written notice of defence by the defendants actually includes within its reach the very matter now set up as a surprise. It states, that the invention claimed by the plaintiff by his patent in 1832, "is according to the specification thereof wholly different and distinct" from the pretended invention mentioned in the patent of 1822. Of course this notice covers the whole claim of each patent; and it puts in controversy every part of the last patent, which is distinguishable from the first, and does not constitute a part of the invention claimed in the first. The defendant, therefore, was by his own special notice of defence, bound to institute all proper inquiries into the nature and actual structure of the original machine, and all the differences between that and the structure of the machine described in the patent of 1832. If he had used ordinary diligence, it is now manifest, that he might have obtained full evidence to any point, which could properly sustain the defence. He came to the trial, content with the preparation and the points, to which his evidence actually led him; and there can be no reason for letting him into a new trial, merely because he could now, upon farther reflection and farther lights, have made a fuller or a better defence. "Interest reipublicae ut finis esset litium," is an old maxim, deeply fixed in the fundamentals of the common law. And Voet beautifully expressed its true reason, when he said, "Ne autem lites immortales essent, dum litigantes mortales sint." The motion for a new trial is therefore overruled.

Motion overruled.