HARMON, administrator, *v.* THE CHARLESTON AND SAVANNAH RAILWAY COMPANY.

1. In view of the evidence at the trial and of the charge of the court taken as a whole, no error was committed for which a new trial should be granted.
2. The newly discovered evidence, coupled with the counter-showing made thereto by the defendant, was not such as to render it an abuse of the discretion of the presiding judge to deny a new trial on that ground.                    *Judgment affirmed.*
    January 11, 1892.

New trial. Evidence. Charge of court. Railroads. Killing of stock. Before Judge HARDEN. City court of Savannah. July term, 1891.

Wright sued the railroad company for the killing of three head of cattle, alleging that its servants failed to give any signal or warning by blowing the whistle or otherwise, and were running at an excessive and unlawful speed, which negligence caused them to kill the stock. The testimony for the plaintiff was, in brief, as follows:

The cattle were found by the defendant's road-bed, badly mangled, evidently having been run over by the cars, and apparently having been dragged; one of them seemed to have been dragged from 100 to 150 yards after it was struck; one was cut in half. They had been in a fenced pasture, and had broken out; the fence was a rail-fence with posts 10 feet apart; and plaintiff considered it safe and sufficient to keep the cattle in. They were killed about four miles from Savannah near the Augusta road, at a place much built up, there being a number of houses on both sides of the road, including a school-house and a church; it was quite a settlement. They were killed about 300 yards from a thoroughfare generally used by the public, crossing the railroad track. The defendant has a blow-post about 400 yards on both sides of this road, and the trains are supposed to blow at these posts for this road. The cattle were killed between this road and the blow-post on the Savannah side. About 40 yards from where the cattle were killed the defendant had erected a station-house, and had put by it a plank crossing. Its freight-trains stop there for plaintiff's freight. This crossing is plaintiff's, but others use it with his consent. The defendant also placed there a sign cautioning people to keep off the tracks. The settlement is not an incorporated town. Plaintiff has never seen any one working the road referred to, or known of any one being summoned to do so; it has no name; it has been there 16 or 18 years, and is much used by the public. A witness who was in the plaintiff's employment and lived on the place, testified that he was about a quarter of a mile from the cattle when they were killed, driving a grass-rake, and was listening for the whistle of the dinner-train (the train that killed them) to blow, as that was his signal for dinner; that he did not hear any signal, and there was nothing to prevent his hearing it if it had

been given; that sometimes they blow at these whistling-posts, and sometimes they do not; that he did not hear any train blow that day or the day before; and that a great many trains pass there at almost all hours during the day, and it is no unusual thing to hear a whistle blow. The cattle were proved to be fine, valuable animals.

For the defendant the testimony of the engineer, fireman and section-master tended to show the following: The cattle were killed by a passenger-train running at schedule speed, between 20 and 25 miles an hour, nearly seven miles from Savannah, about 200 yards after passing the road-crossing, and about 500 or 600 yards beyond the whistling-post which the train had passed. The engineer was sitting on his box looking ahead on the track. He blew the whistle (two long and two short blows) at the whistling-post for the road-crossing; then he saw two cows on the track about one hundred yards ahead of the engine, and beyond the road-crossing, and blew at them; they got off the track, and then within 20 or 25 yards ahead of engine three cattle jumped on the track in front of it, too close to stop before running over them. The engineer applied the air-brakes to stop, blew the whistle, and did everything in his power to prevent the collision. It would have been impossible to have prevented it. The locomotive was in perfect order. The engineer did not see the cattle before they got on the track, which is straight at that place. The atmosphere was smoky on account of the woods being on fire near there; and section-hands were working between the engine and the stock. He did not decrease speed at the blow-post; it was not customary to do that. He did not reverse the engine when the cattle got on the track 20 or 25 yards ahead of it; did not have time to do so; he was blowing the whistle and applying air-brakes at the same time. The fireman was attending

to his duty, putting in fuel. It is down grade at that point, and it would require 200 yards to stop a train running at 25 miles an hour; to stop in less distance is dangerous to passengers in the coaches. The engineer testified that he never tries to stop in less than 300 yards, except in case of accident. He had tried to stop in less than 200 yards to avoid accidents, and thereby displaced the passengers from their seats. The road referred to is a neighborhood road, and though much frequented, is not worked by the public.

The jury found for the defendant. The plaintiff moved for a new trial on the grounds that the verdict was contrary to law and evidence, for newly discovered evidence, and because of various alleged errors in the court's charge not material to be here reported. The newly discovered evidence is contained in an affidavit of one Winkler, as follows: On the day the cattle were killed, deponent was a passenger on defendant's train, known at that time as the one o'clock train. He noticed the circumstances under which this train collided with certain cattle which he afterwards learned to be plaintiff's, near the private station of plaintiff and between the road in that locality used by the public generally (which deponent understood to be a public road) and the blow-post of defendant, the cattle being struck on the Savannah side of this road and at a point much nearer to the blow-post than to said road. At the time they were struck and immediately before, the train was going at its usual full speed; the brakes were not applied, and no effort was made to apply the brakes or to reduce the speed. A short while before reaching these cattle this same train had run into other cattle and over one of them, grinding it up under the train; at this time brakes were applied and the train slowed down, but it had resumed full speed before plaintiff's cattle were reached. Deponent was certain of this, and ob-

served at the time to a fellow-passenger that no brakes had been applied and the engineer must not have seen the cattle until he got right on them. A few days afterwards deponent had a conversation with the engineer, who told him the brakes were not put on when the Wright cattle were killed, because he had no chance to do it as defendant's supervisor or section-master and his gang of workmen were between him (the engineer) and the cattle, that the cattle were in this way hidden from view and he did not see them or have any chance to whistle on brakes or do anything else before reaching them ; and the engineer then blamed the supervisor or section-master. There were affidavits of plaintiff and his counsel as to their ignorance of this newly discovered testimony until after the trial, and their diligence in searching for testimony, etc. ; and an affidavit as to Winkler's standing, reputation and veracity.

In rebuttal the defendant introduced affidavits of the engineer and the section-master. The engineer deposed that on the day when plaintiff's cows were killed no other cow was struck by the train; that just before the train reached the road-crossing beyond which plaintiff's cows were killed, there were two cows upon the track, but they ran off upon the whistle being blown and neither of them was touched by the train; that deponent had no distinct recollection of any such conversation as alleged by Winkler, but if he ever had the conversation with Winkler, is positive that he did not and could not have told him that no brakes were applied at the time of the killing of plaintiff's cows, because such was not the fact, nor did he tell Winkler that he was prevented from seeing the cows go upon the track because the section-master and his hands were thereon, because as a matter of fact deponent did see the cows when they came upon the track. The section-master deposed that his section comprised the

point on the track where the cows were killed; that he was near the scene of collision on the day it occurred, heard the signal whistle and saw that brakes were applied by the engineer and the speed of the train slackened; that on the day when the cows were killed there was no cow other than those of plaintiff struck or injured by the train, between the point of collision and ten miles beyond; that deponent is acquainted with Winkler, whose residence is along the line of the road, and knows that Winkler has more than once sued defendant for killing or damaging his cattle.

DENMARK, ADAMS & ADAMS, for plaintiff.

ERWIN, DUBIGNON & CHISHOLM, for defendant.