[Crim. No. 924. Second Appellate District, Division One.—February 2, 1923.]

THE PEOPLE, Respondent, v. M. F. KADY, Appellant.

[1] CRIMINAL LAW—ARSON—INCENDIARY ORIGIN OF FIRE—SUFFICIENCY OF EVIDENCE.—In this prosecution for arson, the evidence sufficiently shows that the fire was of incendiary origin.

[2] ID. — EVIDENCE — MOTIVE—INSURED PROPERTY.—In a prosecution for arson, a proof of loss made under a policy of insurance covering the destroyed property is relevant to show motive, notwithstanding its tendency to prove a different and distinct offense.

[3] ID. — NEW TRIAL — MISCONDUCT OF JURY — AFFIDAVIT UPON INFORMATION AND BELIEF.—On a motion for a new trial on the ground of misconduct of the jury, an affidavit of the attorney for the defendant as to such misconduct based upon information and belief cannot be considered.

[4] ID.—IMPEACHMENT OF VERDICT—AFFIDAVIT OF JURORS.—The verdict of a jury may not be impeached by the evidence of the jurors themselves, with the single exception that it may be shown by them that the verdict was determined by chance.

APPEAL from a judgment of the Superior Court of Santa Barbara County and from an order denying a new trial. John L. Hudner, Judge Presiding. Affirmed.

The facts are stated in the opinion of the court.

Frank E. Dominguez and W. T. Helms for Appellant.

U. S. Webb, Attorney-General, and Erwin W. Widney, Deputy Attorney-General, for Respondent.

JAMES, J.—Appellant and one Farris were charged by the information of the district attorney with the crime of arson, which was alleged to have been committed on or about the sixteenth day of November, 1921, in the county of Santa Barbara. That the crime charged was of the first degree was shown by appropriate allegations. The jury failed to agree as to the guilt of Farris, but found appellant to be guilty of the crime in the second degree. There was a motion for a new trial, which was denied, and the judgment of imprisonment followed. The appeal is taken from the order denying the motion and from the judgment.

[1] Appellant's principal contention is that the evidence produced by the prosecution failed to show that the fire which he was accused of having kindled was of incendiary origin; he claims that the contrary was established, and that it was made to appear by the evidence that the fire was caused by sparks emanating from a fireplace during his absence from the place. A statement of the facts as the evidence for the prosecution disclosed them to be will demonstrate that this contention is without merit.

Defendants were natives of Syria and were engaged as venders of oriental stuffs, rugs, etc. They appeared in the city of Santa Barbara in September, 1921, and made inquiries of the custodian of a building looking to the renting of rooms. The building was used in part for office purposes and in part for living quarters of persons regularly residing there. For the most part, if not altogether, this appellant acted as spokesman for the two men. Rooms such as they wanted were not available in September. They returned again early in October and learned that two rooms would be vacated on the first of November. Appellant engaged the rooms, paying the November rental in advance. On the first or second day of November the two men appeared and took possession of the rooms, and in the course of the next few days brought in a few articles of furniture, a rug, cretonne curtains for the windows, and a number of boxes containing articles of wearing apparel. In one of the rooms was a fireplace and in this room all of the merchandise was placed. Some wooden shelves were installed and a rack upon which to hang clothing was erected. After the merchandise and furniture had been placed in the room, Farris requested the custodian of the building to introduce him to an insurance agent. The custodian referred him to an agent who had an office near by, and two policies of insurance were issued covering fire loss which might occur. The total amount covered by the policies was the sum of $5,150. About a week after the men had taken possession of the rooms the custodian of the building observed this appellant carrying a sack of charcoal to the apartment. He expressed surprise that charcoal should be used in grates instead of coal but was assured by appellant that charcoal was "the best to use." On the evening of the 16th of November a tenant in the building, noting the presence of

smoke, investigated to determine its source and found that
it was emerging from the rooms occupied by the appellant
and Farris: Neither of the latter were at that time about
the premises and the door was locked. Upon entrance
being effected, fire was found in the room, and charcoal
was burning in the grate. There were evidences that ar-
ticles of apparel had been destroyed. Some of the charcoal
remaining in a bag was burned in a grate by the custodian
of the building some days after the fire occurred, and it
was found that, upon being ignited, the charcoal threw
sparks for a distance of several feet into the room away
from the grate. This fact furnishes a basis for the argu-
ment of appellant that the fire must have been caused by
these sparks from the charcoal during the absence of the
defendants. In view of certain testimony given by other
witnesses, it may strongly be inferred that, in choosing the
charcoal as fuel, appellant sought either to use it as a means
of igniting inflammable material placed near the grate, or
to aid a defense of accident after he had purposely set on
fire the merchandise which he had stored in the room. We
revert now to the testimony of witness Boury. This witness
was a fellow Syrian, a missionary priest, who had been ac-
quainted with the two defendants for more than a year
He had purchased merchandise from them and had been
visited in a social way by the defendants. On an occasion
about a year before the date of the commission of the crime
charged, defendants were visitors at the priest's house. The
latter had some Syrian newspapers published in America in
which he had observed accounts relative to bankruptcy pro-
ceedings affecting other Syrian residents in the United
States. Boury testified that appellant told him it was all
"bluff" about those Syrian men having lost their goods
through bankruptcy. The narrative may be continued in
the language of the witness as used on the stand: "He
[Kady] says, 'I know every state, and I know the different
Syrian people there.' He said, 'That is all bluff. I was
doing that myself.' I said, 'How?' He told me he was in
San Francisco, and near San Francisco,—a little place by
Oakland, I think, and a man he have a business store, by the
name of Ayoube,—I think the fellow is a relative of Mr.
Kady; the wife of Mr. Ayoube and Mr. Kady are cousins,
and this man has a good name. He took the goods from

him and shipped it to Salt Lake, and 'at Salt Lake,' he said, 'I have a fire.' I said, 'How you have a fire, and you get out that way?' He says, 'I know how. I never was caught in my life.' I said, 'How you do it?' He said, 'I dig a little hole in the place and I put the charcoal, and the charcoal,—nobody know it, and it take the charcoal the time to be burned out, and 10 or 11 o'clock I have the fire, and I collect from the insurance,' he said, 'between fifteen and eighteen thousand'; something like that; I don't remember." "Q. Was Charles Farris present all of that time? A. Charles Farris with him, and my housekeeper too. Q. And did Charles Farris make any denial of those statements? A. He said, 'I am satisfied, Father Boury. We know it, how we do.' Q. Was anything else said by either of them on that occasion? A. After that he said he was going to open a store in Santa Barbara. I said, 'How you can open a store? You have no goods.' He said, 'Wait and you will see,' and he goes and walks in the room, and he said, 'In sixty days you will see my pocket full of money.' I said, 'How is that?' He said, 'I will have that stuff,—it isn't more than $200, you can see before your eye.' I said, 'Yes, I see that.' He said, 'We have about $200,' and he says, 'You will see about five or ten thousand coming into our pocket. I will put that in the store, and do the same thing, and the charcoal, and do the same fire I been doing in Salt Lake.'" This testimony was admitted without objection and it established clearly a premeditated design on the part of the defendants to commit a crime involving acts such as were charged against them. The statements made by appellant to witness Boury were not confessions in any sense; they were relevant as showing motive and intent and, taken in connection with other circumstances proved in the case, furnished logical evidence of guilt. The testimony of the witness Boury as to the statement made by Kady of the plan to get money by burning insured property was corroborated by the housekeeper employed by the priest, who was present and heard the statements made. There was evidence given by other witnesses as to the location of burned spots in the room, from which we must assume the jury might have inferred that the fire was of incendiary origin. Some of this testimony was illustrated by gestures and other explanatory means to the jury, but as to the effect

produced by such means of illustration we cannot determine from the transcript. In such a case we may assume that the explanation of the witnesses was illuminating to the jury on the important question being considered, even though the pages of the record do not so disclose it. The tenant who gave the alarm of fire upon discovering the smoke was satisfied that the fire had been purposely kindled among the merchandise. He was allowed to express his opinion in this regard without objection, but he also gave reasons for the opinion. Perhaps the strongest expressions of the witness, indicating his observation and opinion respecting the incendiary nature of the fire, were brought out by the cross-examination of defendant's counsel. A portion of the testimony so given will show its nature: "Q. You were sure it had been set on fire, before you talked with the fire chief? A. Yes, absolutely. I did not talk with the chief, as I remember, at all. Q. How long had you been in that room before you concluded it was so, absolutely? A. About five minutes. Q. And you are sure now it was set on fire? A. Yes. Q. What led you to believe it was set on fire? A. Simply because this window was burned there, and not a slight indication of fire down here. This was the same; the window sill was burned, the curtains burning, the glass broken; no evidence of fire here; not the slightest. The same here. No evidence of fire on this floor. The side of the walls, the curtains were burned, and the window broken."

[2] It was shown in evidence that defendant Farris made proof of loss under the policies which had been issued to him, and attached to the documents was an inventory of the property alleged to have been destroyed. This proof of loss was offered and received in evidence. The only objection made was that the evidence tended to show the commission of a separate offense, to wit, the offense of burning a building with intent to defraud an insurer. This objection was untenable. The fact that merchandise stored in the room where the fire occurred had been previously insured was relevant for the purpose of showing motive on the part of the defendants. "On a charge of arson, it is relevant to show that the accused insured the building, and that he was insolvent; or that the securing of the insurance money was his motive for burning certain buildings." (2 Wharton's Criminal Evidence, 10th ed., sec. 880.) If the tendency of

such evidence was to prove a different and distinct offense, from that charged, it would not be error to admit it. "The test of the admissibility of evidence of other offenses than the one charged, is the connection between the offenses in the mind of the criminal. When such a connection is shown, evidence of the others is admissible for the purpose of establishing identity in developing the *res gestae,* or in making out the guilt of the defendant by a chain of circumstances connected with the crime for which he is on trial." (*People* v. *Cunningham,* 66 Cal. 668 [6 Pac. 700].) The cross-examination of appellant, respecting the taking of an inventory of the property prior to·the time of the fire, furnishes no ground for the claim of error which counsel make, for that examination was not met by any objection except that appellant's counsel did make objection to the language used by the district attorney in framing certain questions. As to that matter we find no reason to conclude that the district attorney's language was such as to prejudice the case for the defendant.

[3] One of the grounds upon which the motion for a new trial was based was that of misconduct of the jury, consisting, first, in an alleged experiment made by one of the jurors while the trial was in progress to determine how long it would take a box, similar to those in which merchandise of the defendants had been placed, to burn after being ignited. The sole evidence offered in support of this ground was an affidavit of the attorney for the appellant. While this affidavit contained the preliminary phrase that the affiant offered the same "based upon his personal knowledge of the facts therein contained," at the hearing of the motion it was admitted by said counsel that he had no actual knowledge of the facts, but that the latter were intended to be stated upon information and belief from statements made by the jurors. The district attorney very properly objected to a consideration of the affidavit on the ground that the law required direct proof of the facts sought to be presented, and that any statement made solely upon information and belief would not be proper evidence. The position of the prosecutor on that question is fully sustained by the decisions. (*People* v. *Findley,* 132 Cal. 301 [64 Pac. 472]; *Gay* v. *Torrance,* 145 Cal. 144 [78 Pac. 540].) Defendant asked leave to call the jurors to the witness-stand to require them

to testify as to the alleged misconduct, to which procedure the court properly sustained objection. [4] Nothing in our law is more firmly established than that the verdict of the jury may not be impeached by the evidence of the jurors themselves, with the single exception that it may be shown by the jurors that the verdict was determined by chance. The early cases are reviewed and the rule restated in *People v. Azoff*, 105 Cal. 632 [39 Pac. 59], to which citation may be added *People v. Findley, supra,* and the case of *People v. Chin Non,* 146 Cal. 561 [80 Pac. 681].

A careful examination of the record demonstrates that it is barren of any substantial error which would justify a reversal of the order and judgment.

The judgment and order are affirmed.

Conrey, P. J., and Houser, J., concurred.

A petition for a rehearing of this cause was denied by the district court of appeal on February 27, 1923, and a petition to have the cause heard in the supreme court, after judgment in the district court of appeal was denied by the supreme court on April 3, 1923.

All the Justices concurred.