[Crim. No. 1732. Second Appellate District, Division Two.—March 14, 1929.]

THE PEOPLE, Respondent, v. MARCO ALBORI, Appellant.

Thomas P. White, Otto Christensen, Vincent C. Hickson and A. P. G. Steffes for Appellant.

U. S. Webb, Attorney-General, and John L. Flynn, Deputy Attorney-General, for Respondent.

THOMPSON (IRA F.), J.—Two indictments were returned by the grand jury of Los Angeles County against the defendant, both of them charging him with assault with intent to commit murder, one of them alleging that he did commit an assault with a deadly weapon upon the person of one Dominick Conterno, and the other that he committed an assault with a deadly weapon upon the person of Harry Judson. Verdicts of guilty of assault with a deadly weapon were returned by the jury and this appeal is from the judgments pronounced upon the verdicts and from an order denying the defendants' motion for a new trial.

Before reviewing in detail the testimony which appellant says is insufficient to support the verdicts we shall address ourselves to the other specifications or assignments of error in the order set out in his brief, the first of which is that the court erred in refusing to give an instruction requested by him to the effect that the offense of assault is one necessarily included in the offense charged in the indictments, and instructed the jury that the defendant might "be convicted of either the crime of assault with a deadly weapon with intent to commit murder, or the crime of assault with a deadly weapon." It is well for us to note

at this juncture that Conterno and Judson were both shot and injured during the disturbance out of which the charge against appellant arose. The attorney-general asserts that it was this act of shooting for which the appellant was put on trial and not for a fist fight which preceded it. We have already observed that while the indictments charged the offense of assault to commit murder, yet they stated the facts constituting the assault by saying that appellant did "wilfully, unlawfully, feloniously and with malice aforethought, commit an assault with a *deadly weapon* upon the person" etc. (Italics ours.) Our first consideration, therefore, is to determine the effect of this language in the indictment. In *People* v. *Owens,* 3 Cal. App. 750 [86 Pac. 980], it is said: "By placing the words 'with a deadly weapon' in the indictment the people were limited to proving that particular kind of an assault, and the defendant was informed of the particular character of the assault which he was to meet." In view of the established fact that Conterno and Judson were both injured by pistol shots, the language above quoted that "the people were limited to proving that particular kind of an assault" would seem to indicate that the indictments here were drawn for the express and sole purpose of trying appellant to determine whether he fired the shots. The statement of the supreme court in *People* v. *Madden,* 76 Cal. 521 [18 Pac. 402], is also illuminating. It reads: "The defendant having fired his pistol at Jacobson during the fight which occurred at Ferris' saloon, if guilty at all, was guilty of something beyond a simple assault. In this view we think defendant sustained no injury in the refusal to direct the jury that they might render a verdict against defendant of a simple assault." There are numerous authorities to the effect that where the evidence is such as to make it clear that if the defendant is guilty at all he is guilty of the offense charged and not of any included offense, that it is proper to refuse to instruct the jury that they may convict of an included crime. (*People* v. *Swist,* 136 Cal. 524 [69 Pac. 223]; *People* v. *Wright,* 93 Cal. 564 [29 Pac. 240], *People* v. *Barry,* 90 Cal. 41 [27 Pac. 62]; *People* v. *Tolli,* 93 Cal. App. 62 [268 Pac. 1078]; *People* v. *Di Donato,* 90 Cal. App. 366 [265 Pac. 978].) These cases are helpful in aiding us to arrive at a conclusion upon the effect of the language employed in these

indictments. Had it been established beyond any doubt that the appellant had fired the pistol which injured Conterno and Judson, a refusal to instruct on simple assault would have been proper under the authorities cited. By parity of reasoning the logic of the language employed in and quoted from *People* v. *Owens, supra,* becomes apparent. The indictments charged the appellant with having fired the shots, and with nothing less; the people were limited by their choice of words to proof of an offense not less than ''assault with a deadly weapon.''

Flowing from this situation there is another reason why the appellant may not complain of the refusal of the court to instruct the jury that it might find appellant guilty of assault. In *People* v. *Lopez,* 135 Cal. 23 [66 Pac. 965], we read: ''Again, the instruction complained of was not harmful to the defendant. The jury were fully instructed as to the ingredients of the offense of an assault with intent to murder and of an assault with a deadly weapon, and were then, in effect, told that if they were not satisfied that defendant was guilty of one of these offenses they must acquit him altogether. It will be presumed that they heeded this instruction and performed their whole duty in accordance with it. If they had not been satisfied beyond a reasonable doubt that the defendant was guilty of either of the higher crimes, but were satisfied that he was guilty of assault, under the instructions they would have acquitted him. The error, then, if any was committed, was favorable to defendant, and the case should not be reversed on account of it.'' Almost identical language is again employed by the supreme court in the case of *People* v. *Watts,* 198 Cal. 776, 796 [247 Pac. 884], where the defendant was charged with murder and the jury were told to find him guilty of murder in the first degree or acquit him. These authorities so aptly state the situation here and so effectually conclude appellant that further comment is unnecessary.

The next three assignments of error by the appellant are all based upon the instructions given and refused relative to the question of self-defense. He first notes an objection to an excerpt from the instruction on this subject which reads as follows: ''Whenever an assault is brought upon a person by his own procurement, or under an appearance of hostility which he himself creates, with a view of having his adver-

sary act upon it, and he so acts, the plea of self-defense under such circumstances is unavailable.'' Appellant's assertion that this portion of the instruction is erroneous is based upon his statement that there was no evidence which justified it. He concedes that it states a correct principle of law. There is testimony that prior to the firing of· the shots the appellant asked a Mr. Freeman while they were in the washroom of the ship cafe, where the disturbance began, ''who the jane was'' with whom Freeman was dancing, and when the appellant was told that it was none of his business he knocked Freeman down, cutting his mouth and causing the blood to run; that a few seconds later when Freeman re-entered the cafe the appellant knocked him down again and said, ''Get up and I will give you a right.'' Following this incident Conterno testified that he approached Freeman while he was still on the floor and said, . . . what is the matter, Mr. Freeman, or who hit you and somebody had said 'why the man to your left,' and just as I turned and looked, why I saw this man,'' (appellant) ''pretty good sized man there, and at that instant he made a pass at me as though he wanted to hit me and at that instant I got in a fight myself with him.'' It cannot be successfully argued that the testimony to which we have just made reference did not justify the jury in finding as a matter of fact that the appellant had instigated the fight which led up to the shooting and thereby had put himself in a position where the ''plea of self-defense'' was unavailable to him under the law as stated in the instruction.

Appellant next complains because the court instructed the jury as follows: ''The court instructs the jury that a person, on whom another is making a mere assault with the fist, not with the intent to kill or do great bodily harm, and who is not deceived as to the character of such assault, is not justified in using a deadly weapon in self-defense,'' and because the court refused to give two instructions requested by the appellant to the effect that if he were assailed by another with his fists under such circumstances as to lead a reasonable man to apprehend great bodily injury he would have the right to defend himself as a reasonable man would, and if he so acted would be entitled to an acquittal. Standing alone, the instruction of which the appellant complains would be subject to criticism, because of

its emphasis of the intent of the assailant, which is not the governing factor, but it was immediately preceded and immediately followed by instructions covering the proper subject matter of the instructions requested by the appellant, and when the instructions covering the right of self-defense are read as a whole it is apparent that the jury could not have misunderstood its purport. In no less than five other instructions they were told that if on the night in question the defendant had reasonable ground to and did believe that he was in danger of great bodily injury or of having a felony committed upon him, he was entitled to use such force in self-defense as a reasonable man would have used under such circumstances. Considering the instructions as an entirety, they covered the subject fully and fairly, and the one complained of could only have been interpreted by the jury as meaning that if the appellant did not have reasonable grounds and did not actually believe that he was in danger of great bodily harm from an assault with fists he was not justified in using a deadly weapon in self-defense. As thus viewed, the instruction does not violate the law relating to self-defense. ▮ Nor do we find in the language attacked the assumption of facts or comment thereon which counsel asserts. The instruction states only a hypothetical situation which may or may not have been found by the jury actually to have existed. It is sufficient to assert that one view of the testimony adduced would support the jury's conclusion that an attack upon the appellant was provoked by him and that his assailants did not indicate to him or to a reasonable mind a threat of doing great bodily injury.

▮ As already noted, the subject matter of the requested instruction was covered in instructions given to the jury, with the possible exception that the trial judge did not in express words say that "great bodily injury may be inflicted by use of the fists." He did say to them, however, that " 'necessary self-defense' includes *every case* where there is reasonable ground to apprehend a design to commit a felony or to do some great bodily injury, and where the circumstances are sufficient to excite the fears of a reasonable man." (Italics ours.) For the court to have stated that "great bodily injury may be inflicted by use of the fists" would have been the statement of a commonplace, a situation comprehended by the instruction which said that

self-defense is available in "every case" where a reasonable man would be fearful of great bodily injury. ■ Whether the attack with fists was not provoked by appellant, and whether the circumstances of it were of such a character as to excite the fears of a reasonable man, were questions properly submitted to and left with the jury under the instructions. Nothing additional was necessary.

■ Appellant also contends that the court committed error when it gave the following instruction:

"A person may have a lively apprehension that he is in imminent danger, and believe that his apprehension is based on sufficient cause and supported by reasonable grounds; that such apprehension is reasonable and warranted from appearances as they present themselves to him. If, however, he acts on these appearances, he does so at his peril, because the law leaves it to no man to be the exclusive judge of the reasonableness of the appearances upon which he acts, but prescribes a standard of its own, which is not only did the person acting on appearances himself believe that he was in deadly peril of his life or of receiving great bodily harm, but would a reasonable man, situated as the defendant was, seeing what he saw, and knowing what he knew, be justified in believing himself in danger?" and in connection therewith refused to give three instructions proposed and requested by him. With respect to the instruction given appellant says that it was telling the jury that the "law gives no man the right to determine for himself the character of the imminent danger" and then argues that the law does not punish an honest mistake concerning the extent of the danger which may have confronted him. He relies upon *People* v. *Thomson*, 145 Cal. 717, 720 [79 Pac. 435], to support his argument, but we think that one short quotation from that case expressing the central point of the opinion is sufficient to refute the argument. It reads: "If the appearances are such as to justify *a reasonable man in believing* that it is necessary to instantly kill another in order to save himself from death or great bodily injury, and *he does so* believe, he is not required to exercise any 'due care' and 'circumspection' as to the manner of killing." (Italics ours.) The instruction here given did not limit the right of self-defense by imposing the requirement that the manner of the shooting had necessarily to be with due

care and circumspection, but it did with all propriety fix the standard by which to judge the necessity of self-defense to be the actions of a reasonable man under all the apparent circumstances, and quite properly denied the appellant the right to be the sole judge of his course of action. That there can be no doubt as to the correctness of the instruction reference may be had to the language of the supreme court in *People* v. *Glover*, 141 Cal. 233 [74 Pac. 745]. Of the instructions which were not given in this particular it may be said generally that they were covered by the instructions' given, and of one of them we observe that it was redundant, and inclining to the argumentative. Therefore, if it had been given it would have confused and tended to befog the jury's mind upon the standard of action required of one acting in self-defense. There was no error in their refusal.

The defendant requested the court to give an instruction as follows: ''The court instructs the jury one who is not related to another and comes upon that person after such person has been assaulted but when the assault is completed and is not in progress, has no right to use force upon another whom he believes was guilty of an assault upon his friend.

''Subdivision 3 of section 197 of the Penal Code of California restricts the right of self-defense to the person himself who is assaulted or when committed in the lawful defense of a wife or husband, parent, child, master, mistress, or servant of such person.'' The appellant now maintains that it was error for the court to have refused to give the instruction. There is no testimony that Conterno used force or assaulted the appellant in the defense of Freeman. The prosecution theory and testimony supporting it is that while the appellant was inviting Freeman to arise and receive ''a right'' Conterno came upon the scene, whereupon the appellant gave indication of attacking Conterno. The defense testimony tends to establish an assault by Conterno without provocation but not in defense of Freeman. There is no situation which the jury might have found to which the latter part of the offered instruction would have been applicable. And had the court given the instruction in the form proposed it could not have failed to befuddle the mind of the jury with respect to the issues of the trial and incidentally with the plea of self-defense interposed by the

defendant. Under such circumstances it was proper for the court to refuse the instruction. ■ The court is not bound to separate the proper from the improper portion. (*People* v. *Davis*, 135 Cal. 162 [67 Pac. 59]; *People* v. *Wagner*, 29 Cal. App. 363 [155 Pac. 649].)

■ The appellant, while conceding that it was proper for the trial court to have instructed the jury upon the issue of transferred intent, says that it should have incorporated in the instruction, as was done in the one proposed by him, but not given by the trial judge, a statement that if the assault were justifiable, that is, done in the exercise of appellant's right of self-defense, there would have been "no transferred intent." We have already observed that the jury were fully instructed upon the law and right of self-defense, and it is inconceivable that they could have understood that if they believed appellant was acting in self-defense they should do other than acquit him. This is especially true in view of the fact that in the instructions with respect to the verdicts of assault with intent to murder or assault with a deadly weapon which might be returned by the jury, the trial judge instructed them that it was necessary for them to determine that the assault was not committed in self-defense before either verdict might be found. Under these circumstances it was not improper for the court to refuse the requested instruction or to fail to incorporate its substance in the one given.

■ Appellant very insistently urges that he was deprived of an orderly trial by jury, and that the jury received evidence out of court. The record upon which he bases this argument was made up for use and was used upon his motion for a new trial. He filed three affidavits, in one of which one of his counsel averred that on the fourth day after the verdict was returned he (counsel) had a conversation with the deputy district attorney who prosecuted the defendant, wherein the deputy told affiant that he knew that the defendant would never get an acquittal because a juror named Henderson was absolutely against him; that the trial judge had told him "the other day that the bailiff had told" the trial judge "that this juror Henderson was saying among the other jurors that your witness Perry . . . had received $5,000 from Marco to testify for him in the first trial, and that he (juror Henderson) knew your

witness Perry and knew that he was a friend of Marco's and that he had only testified because Marco paid him the $5,000.'' An affidavit by the deputy district attorney filed in response to the one from which we have just quoted denied that the conversation took place at the time mentioned or at any other time. Two additional affidavits were filed by the defendant in which the affiants (one of them being one Grainger and the other the witness Perry) stated that they called on Juror Henderson on September 13, 1928; that Perry told Henderson that he had heard that the latter had stated that he, Perry, had received $5,000 for giving his testimony; and that Henderson had made this statement in the presence of other jurors prior to the return of a verdict; that in response to these statements Henderson replied that he had so stated and that he had heard the rumor from ''a crowd in Inglewood''; that ''other jurors knew of others who were getting paid''; it ''was a rotten mess and we wanted to clean them up.'' The state presented the affidavit of Henderson in reply to those filed by the defense in which this juror denied that at any time he had had the conversation with Perry and Grainger set forth by them, and denied that he had discussed the witness Perry with any of the jurors or stated to them or any of them that Perry had received $5,000 for testimony given at the first trial. It is obvious that the facts upon which both of appellant's claims are founded were squarely put in issue by the affidavits filed by the prosecution. The affidavit of Henderson denied that he had made the statement to other jurors, and the affidavit of the deputy district attorney denied that he had ever quoted the trial judge as saying that he had information from the bailiff concerning any misconduct. Under these circumstances it was incumbent on the trial judge to determine the issue. Undoubtedly if he had believed that the jury had received testimony in any manner other than through the regular channels of trial procedure he would have granted a new trial. By his denial of the motion for a new trial he evidenced his conviction that the juror was not guilty of misconduct, and where, as here, there is a substantial showing to uphold that conclusion, the ruling cannot be disturbed. In the case of *People* v. *Sing Yow*, 145 Cal. 1 [78 Pac. 235], quoted with approval in *People* v. *Oxnam*, 170 Cal. 211 [149 Pac. 165], after determining that

a motion for a new trial is addressed to the sound discretion of the trial judge it is said with respect to counter-affidavits:

"As has already been shown, it is well settled in this state that it is for the trial court to determine whether or not the newly discovered evidence is of such a character as to make it reasonably probable that it would produce a different result on another trial, and in the determination of that question we can conceive of no good reason why the trial court should be limited to a consideration of the affidavits offered by defendant and the record of the trial. Such certainly has not been the practice in this state. In *People* v. *Fice,* 97 Cal. 459 [32 Pac. 531], the record shows that the counter-affidavits were entirely devoted to a contradiction of the alleged facts proposed to be proved by the newly discovered witnesses, and this court said: 'Upon the ground of newly discovered evidence it is sufficient to say that the affidavits offered in support thereof were fully contradicted by counter-affidavits on the part of the prosecution, and for that reason the court below exercised a proper discretion in refusing to grant the motion.' (See, also, *Thompson* v. *Thompson,* 88 Cal. 110 [25 Pac. 962]; *People* v. *Mesa,* 93 Cal. 580 [29 Pac. 116]; *Merk* v. *Gelzhaeuser,* 50 Cal. 631; *Doyle* v. *Sturla,* 38 Cal. 456.) It has been held in many cases in other states that it is entirely competent to show by counter-affidavits on motion for new trial that a newly discovered witness is unworthy of credit. (*Williams* v. *Johnson,* 18 Johns. (N. Y.) 488; *Parker* v. *Hardy,* 24 Pick. (Mass.) 246; *Pomeroy* v. *Columbia Ins. Co.,* 2 Caines (N. Y.), 260; *Erskine* v. *Duffy,* 76 Ga. 603; *Greenleaf* v. *Grounder,* 84 Me. 50 [24 Atl. 461]; *Moore* v. *State,* 96 Tenn. 209 [33 S. W. 1046]; 1 Graham and Waterman on New Trials, *p. 485.) In other cases, counter-affidavits as to the alleged facts to be testified to by new witnesses were allowed. (*Coast Line R. R. Co.* v. *Boston,* 83 Ga. 387 [9 S. E. 1108]; *Harmon* v. *Charleston etc. Ry. Co.,* 88 Ga. 261 [14 S. E. 574]; *Harris* v. *Rupel,* 14 Ind. 209; *Searcy* v. *Martin-Woods Co.,* 93 Iowa, 420 [61 S. W. 934]; *Ames* v. *Howard,* 1 Sum. 482; *Lorig* v. *Davenport,* 99 Iowa, 479 [68 N. W. 717]; *Finch* v. *Green,* 16 Minn. 355; *State* v. *Burd,* 115 Mo. 405 [22 S. W. 377]; *Burlingame* v. *Cowee,* 16 R. I. 40 [12 Atl. 234]; *Dignowitty* v. *State,* 17 Tex. 521 [67 Am. Dec. 670]; *Nicholas* v. *Commonwealth,* 91 Va. 741 [21 S. E. 364]; *Hol-*

*land* v. *Huston,* 20 Mont. 84 [49 Pac. 390]; *Hammond etc. Ry. Co.* v. *Spyzchalski,* 17 Ind. App. 7, 16 [46 N. E. 47].)

"In a note, in volume 14 of the Encyclopedia of Pleading and Practice, page 913, it is said that it is uniformly held that on the hearing of such a motion the court may examine counter-affidavits to determine whether a new trial would promote justice or result in a different judgment."

That there is a further fatal defect in the argument of counsel upon the question now under consideration is patent from the language employed in *People* v. *Kady,* 60 Cal. App. 661 [214 Pac. 293], where a very similar objection was under scrutiny. The court says:

"One of the grounds upon which the motion for a new trial was based was that of misconduct of the jury, consisting, first, in an alleged experiment made by one of the jurors while the trial was in progress to determine how long it would take a box, similar to those in which merchandise of the defendants had been placed, to burn after being ignited. The sole evidence offered in support of this ground was an affidavit of the attorney for the appellant. While this affidavit contained the preliminary phrase that the affiant offered the same 'based upon his personal knowledge of the facts therein contained,' at the hearing of the motion it was admitted by said counsel that he had no actual knowledge of the facts, but that the latter were intended to be stated upon information and belief from statements made by the jurors. The district attorney very properly objected to a consideration of the affidavit on the ground that the law required direct proof of the facts sought to be presented, and that any statement made solely upon information and belief would not be proper evidence. The position of the prosecutor on that question is fully sustained by the decisions. (*People* v. *Findley,* 132 Cal. 301 [6 Pac. 472]; *Gay* v. *Torrance,* 145 Cal. 144 [78 Pac. 540].) Defendant asked leave to call the jurors to the witness-stand to require them to testify as to the alleged misconduct, to which procedure the court properly sustained objection. Nothing in our law is more firmly established than that the verdict of the jury may not be impeached by the evidence of the jurors themselves, with the single exception that it may be shown by the jurors that the verdict was determined by chance. The early cases are reviewed and the rule restated in *People*

550

v. *Azoff*, 105 Cal. 632 [39 Pac. 59], to which citation may be added *People* v. *Findley, supra*, and the case of *People* v. *Chin Non*, 146 Cal. 561 [80 Pac. 681].''

 The appellant also asserts that the trial judge was guilty of misconduct and deprived appellant of a fair and impartial trial by commenting on the facts. The asserted misconduct is said to have been committed by the judge when he asked a defense witness on cross-examination four short questions concerning his knowledge of the time daylight occurred on June 27th, and his comment during a discussion with counsel based upon his judicial knowledge, concerning the twilight period before the sun arises and that one-half hour before sunrise it is sufficiently light for a hunter to shoot ducks. Assuming that there was misconduct, and we are unable to perceive any, it is a sufficient answer to say that counsel did not call it to the court's attention at the time and give him an opportunity to correct the harm, if any was done. Under a familiar rule, to support which it is unnecessary to cite authorities, the assignment must be disallowed.

 It is next argued that the court erred in refusing to entertain a motion that the sentences be made to run concurrently. Section 669 of the Penal Code discloses a legislative intent that the terms of imprisonment should ordinarily run consecutively, it being there stated in a proviso, however, '' . . . that in exceptional cases the judgment, in the discretion of the court, may direct that such terms of imprisonment, or any of them, shall run concurrently.'' That the trial judge entertained an idea that the term which a defendant is required to serve rests with the prison board is not the controlling factor. There is nothing in the case to make of it the ''exceptional case'' mentioned in the statute. Had appellant been convicted of the offenses charged instead of the lesser and included offenses there might possibly have been room for argument, but the offense of assault with a deadly weapon in a room filled with people, any one of whom was apt to be fatally injured, is of such a serious character that we see no reason why appellant should not pay the price of both shots. Certainly the situation is not one demanding exceptional solicitude for fear of over punishment.

■ Finally we are brought to the point where it is necessary to dispose of appellant's contention that the evidence is insufficient to support the verdicts. We have already mentioned the bullet wounds received by Conterno and Judson. There was ample testimony supporting the conclusion that appellant fired the shots which inflicted the injuries. We have also referred to testimony which supports the belief that appellant was the aggressor in the fight with Freeman, as well as the one which followed with Conterno. Without going into too great detail the testimony of the witness Freeman sufficiently evidences the fact that there was support for the view of the jury that appellant did not shoot in self-defense. This witness says that during the fist fight between Conterno and appellant someone grabbed Conterno's tuxedo coat and ripped it; that Conterno let go of appellant, pulled off his coat, throwing it into the lobby, and started back toward appellant, whereupon the latter said something about cleaning out the "rat joint" or something of that sort; pulled his gun real quick and fired the shots which caused the injuries. The testimony of this witness would be sufficient, but there is other evidence supporting the conclusion of the jury that the shots were not fired in self-defense. ■ And, although the evidence was badly in conflict and all of the prosecution witnesses did not agree upon the details, it was the jury's province and duty to determine who was telling the truth and not the province of this court.

Judgments and orders affirmed.

Works, P. J., and Craig, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on March 28, 1929, and a petition by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on April 11, 1929.

Preston, J., and Langdon, J., dissented.