JOHN E. LOWRY, Appellant, v. STANDARD OIL COM-
PANY OF CALIFORNIA (a Corporation), Respondent.

Paul Blackwood and Samuel P. Young for Appellant.

Reginald I. Bauder for Respondent.

WOOD (W. J.), J.—In this action plaintiff claims that he was assaulted by defendant's service station manager, who chased him from the station with a revolver in the belief that plaintiff was the accomplice of a bandit who was robbing the station. In running away from the station plaintiff stumbled and received serious injuries for which he seeks to recover damages. At the first trial of the action a jury returned a verdict in plaintiff's favor in the sum of $10,572 but on appeal the judgment was reversed because of errors in the instructions to the jury on the question of whether defendant's employee was justified in his conduct. (*Lowry* v. *Standard Oil Co.,* 54 Cal.App.2d 782 [130 P.2d 1].) At the second trial the jury returned a verdict in favor of defendant and plaintiff appeals from the resulting judgment.

Defendant operated a gasoline service station at the southwest corner of Beverly and Rampart Boulevards in Los Angeles. At about ten o'clock in the evening of August 8,

1939, a bandit attempted to rob the manager of the station, G. M. Greenlee, who resisted the bandit, wrestled with him, threw him to the floor and took the bandit's revolver from him.

Plaintiff testified that as he was walking on the sidewalk on the south side of Beverly Boulevard he noticed as he approached the service station that two men were scuffling inside the station building and that one of them had the other down on the floor and was kicking him. Plaintiff stopped and said, "Hey, you fellows are going to hurt one another there," and one of them said, "Come on in here." He further testified that he walked away and when he had gone about ten feet Greenlee came running out of the station and ran after him with an automatic firearm, pointing the weapon at plaintiff and clicking it. Plaintiff began to run as fast as he could when he saw Greenlee come out of the station and in trying to escape he fell and received the injuries for which he seeks damages. Plaintiff was on the sidewalk at all times as he passed the service station. Greenlee gave no outcry or any warning to plaintiff to halt before he chased him with the weapon. When plaintiff fell Greenlee returned to the station. It is not disputed that Greenlee's actions were within the scope of his employment.

Greenlee testified that after the bandit had hit him on the head several times with a gun, he wrestled with the bandit and knocked the gun from his hand; that he was dazed by the blows on his head; that he heard someone calling from the opposite side of the pump, "Don't hurt him, don't hurt him"; that, thinking that the man calling was a partner of the hold-up man, he took the gun and went out the door of the station and saw plaintiff running; that he ran after plaintiff for 18 or 20 feet, when plaintiff fell; that the bandit had arisen from the floor and he returned to the station; that when he heard the man on the opposite side of the pump say, "Don't hurt him" he did not reply, "Come on in."

There is not a great deal of difference between the statements of the two main witnesses. Plaintiff's testimony differs from that of Greenlee as to the point at which plaintiff spoke to the two men scuffling within the station. Plaintiff testified that he was on the sidewalk and Greenlee testified that he heard the man calling from the opposite side of the pumps, which were located approximately 10 feet south of

the sidewalk and approximately 10 feet from the station building. He testified that he could see nothing except the head of the man who had spoken. There is a further discrepancy between the statements of the two principal witnesses as to the point where plaintiff stumbled but this discrepancy is of no importance in this discussion.

At defendant's request the court gave to the jury the following instruction: "A person who is suddenly confronted with unexpected and imminent danger, either to himself or to others, is not expected, nor required, to use the same judgment and prudence that is required of him, in the exercise of ordinary care, in calmer and more deliberate moments. His duty is to exercise only the care that an ordinarily prudent person would exercise if confronted with the same unexpected danger, under the same circumstances. If at that moment he does what appears to him to be the best thing to do, and if his choice and manner of action are the same as might have been followed by any ordinarily prudent person under the same conditions, he does all the law requires of him, although, in the light of after-events, it should appear that a different course would have been better and safer."

The court also instructed the jury: "If from a preponderance of all the evidence in this case you find that Greenlee committed an assault upon the person of plaintiff Lowry; and you further find that plaintiff Lowry sustained injuries by reason of the acts of Greenlee; and you further find that said Greenlee did not act as a reasonably prudent person would have acted under like circumstances then your verdicts should be in favor of plaintiff Lowry and against the defendant Standard Oil Co. If, however, you find from a preponderance of all the evidence that Greenlee acted as a reasonably prudent person would have acted under like circumstances, then your verdict should be in favor of the defendant, Standard Oil Company."

After the jury had deliberated for several hours they returned to the court room for further instructions. The foreman stated: "The question is this: Was the action of Mr. Lowry in intruding into the property enough to justify Mr. Greenlee's actions?" The judge thereupon stated: "That is a question that the jury themselves will have to determine under the rule I have given you, as to whether an ordinary prudent person under like circumstances would have done

what Mr. Lowry did do, and would a reasonably prudent person have done exactly as Mr. Greenlee did under the circumstances. That is the only answer I can give you that I know of. If counsel have any suggestions in regard to the matter, you may approach the bench.'' Counsel approached the bench and plaintiff's counsel asked the court to instruct the jury fully on the rules applicable in case of the eviction of an intruder or trespasser. Counsel also called the court's attention to his contention that contributory negligence was not an issue in the case. The court declined to grant the request of plaintiff's counsel.

The evidence shows without conflict that Greenlee assaulted plaintiff and the question for the determination of the court was whether the actions of Greenlee were justified. Certain principles applicable to the defense of justification are stated in the opinion on the former appeal in this action. It is there stated: ''A question in this case, therefore, was whether a reasonable man, situated as the employee was, would be justified in acting as the employee did.'' The court referred with approval to the opinion in *People* v. *Albori*, 97 Cal.App. 537 [275 P. 1017], wherein it is stated that if a person acts on apprehension that he is in imminent danger and believes his apprehension is based on sufficient ground ''he does so at his peril, because the law leaves it to no man to be the exclusive judge of the reasonableness of the appearances upon which he acts, but prescribes a standard of its own, which is not only did the person acting on appearances himself believe that he was in . . . peril . . . but would a reasonable man, situated as defendant was, seeing what he saw, and knowing what he knew, be justified in believing himself in danger?'' In running after plaintiff and pointing and clicking the firearm Greenlee unquestionably acted intentionally. ■ Negligence is not charged in the pleadings and it is not an issue in the case. Nevertheless the trial court in the instructions above quoted impliedly informed the jury that negligence or lack of negligence on the part of Greenlee was an issue for their determination, for the court told them that ''his duty is to *exercise only the care* that an ordinarily prudent person would exercise . . . and (if) you further find that said Greenlee did not act as a reasonably prudent person would have acted under the circumstances then your verdict should be in favor of plaintiff. . . . If, however, you find from a preponderance of all the evidence that Greenlee

acted as a reasonably prudent person would have acted under like circumstances, then your verdict should be in favor of the defendant, Standard Oil Company." These instructions would be appropriate in an action based upon negligence and are generally given in such actions. But they have no place in an action based upon a charge of assault. (*Lambrecht* v. *Schreyer*, 129 Minn. 271, 273 [152 N.W. 645, L.R.A. 1915 E 812] ; *Hawks* v. *Slusher*, 55 Ore. 1, 4 [104 P. 883, Ann. Cas. 1912A 491].) The error of the court in giving these instructions was emphasized and made more prejudicial to plaintiff when the jury returned to the court for further instructions and asked the court if the action of plaintiff in "intruding" upon defendant's property was a justification for Greenlee's actions. Instead of enlightening the jury upon the rules applicable to trespass, the court told them that in passing upon the question they should determine "whether an ordinary prudent person under like circumstances would have done what Mr. Lowry did do, and would a reasonably prudent person have done exactly as Mr. Greenlee did under the circumstances." By thus instructing the jury the court in effect told them that they must decide against the plaintiff if they should find that plaintiff had not acted as an ordinarily prudent person. It injected into the case an issue very similar to the defense of contributory negligence presented in accident cases. It permitted the jury to render a verdict in favor of defendant without regard to any conclusions they might reach as to misconduct on the part of Greenlee.

 The court erroneously instructed the jury: "The mere pointing of an unloaded weapon at another, without any attempt to use such weapon does not constitute an assault." There was no factual basis for this instruction. The evidence established without conflict that Greenlee did not merely point the weapon at plaintiff without attempting to use it, but on the contrary he ran after plaintiff, clicking the weapon and placing plaintiff in fear of his life. From this instruction the jury could have reasonably inferred that the court intended to instruct them that Greenlee's conduct could not form the basis of a judgment against defendant. Moreover, the instruction does not accurately state the rule applicable to the present action. "Generally speaking, an assault is a demonstration of an unlawful intent by one person to inflict immediate injury on the person of another then

present." (Am.Jur. vol. 4, p. 124, sec. 2.) ▮ A civil action for assault is based upon an invasion of the right of a person to live without being put in fear of personal harm. Every person has "the right of protection from bodily restraint or harm." (Sec. 43, Civ. Code.) It is clear that a person's right to live in society free from being put in fear of personal harm is invaded if he believes that an unloaded firearm being pointed at him is loaded. The pointing of a gun at another in a threatening manner is sufficient to cause fear of personal injury unless it is known by the person at whom the weapon is pointed that the gun is in fact unloaded. (4 Am.Jur. p. 134, sec. 13; *Chapman* v. *State,* 78 Ala. 463, 464 [56 Am.Rep. 42].)

▮ The court instructed the jury: "It is alleged in plaintiff's complaint that G. M. Greenlee did wilfully and unlawfully, at the time and place in question, assault and injure the plaintiff. In that connection you are further instructed that in determining the question of whether or not the plaintiff has proven this charge by a preponderance of the evidence, it is not sufficient for plaintiff merely to show that he was chased by the defendant Greenlee, and that plaintiff was injured, as a result thereof, plaintiff must go further and show as alleged in his complaint that such conduct was wilful and unlawful." By this instruction the court erroneously placed upon plaintiff the obligation to establish that Greenlee's conduct was unlawful. Clearly, Greenlee's conduct was wilful but the question whether it was unlawful depends upon the view to be taken of the circumstances shown in evidence. When plaintiff presented evidence showing that Greenlee chased him, pointed a gun at him and clicked it, he established a prima facie case of assault. ▮ In claiming that the assault was justified defendant presented an affirmative defense and it was incumbent upon defendant to establish this defense by a preponderance of the evidence. (*Marriott* v. *Williams,* 152 Cal. 705, 711 [93 P. 875, 125 Am.St.Rep. 87].)

The judgment is reversed.

Moore, P. J., and McComb, J., concurred.

A petition for a rehearing was denied March 14, 1944, and respondent's petition for a hearing by the Supreme Court was denied April 20, 1944. Traynor, J., and Schauer, J., voted for a hearing.