# FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

THOMAS AVINA; ROSALIE AVINA;
B.F.A., a minor; B.S.A., a minor,
*Plaintiffs-Appellants,*

v.

UNITED STATES OF AMERICA,
*Defendant-Appellee.*

No. 11-55004

D.C. No.
3:08-cv-01302-
W-WMC

OPINION

Appeal from the United States District Court
for the Southern District of California
Thomas J. Whelan, Senior District Judge, Presiding

Argued and Submitted
May 9, 2012—Pasadena, California

Filed June 12, 2012

Before: Harry Pregerson, Susan P. Graber, and
Marsha S. Berzon, Circuit Judges.

Opinion by Judge Pregerson

## COUNSEL

Raymond Buendia, Law Office of Raymond Buendia, San Diego, California, for the plaintiffs-appellants.

Lindsey Powell, Department of Justice Civil Division, Washington, D.C., for the defendant-appellee.

**OPINION**

PREGERSON, Circuit Judge:

In 2008, Thomas Avina and Rosalie Avina and their two minor daughters, B.F.A. and B.S.A., filed a complaint in federal district court against the United States government, alleging causes of action under the Federal Tort Claims Act ("FTCA"), *see* 28 U.S.C. §§ 2671-2680. Specifically, the Avinas alleged that agents from the United States Drug Enforcement Administration ("DEA") committed the torts of assault and battery and intentional infliction of emotional distress when they executed a search warrant at the Avinas' mobile home. The district court granted summary judgment in favor of the United States, holding that DEA Agents used reasonable force when they executed the search warrant. The Avina family appeals the district court's adverse summary judgment ruling.

As discussed below, we agree with the district court that there is no genuine issue of material fact regarding whether DEA Agents' use of force against the adult members of the Avina family (Thomas Avina and Rosalie Avina) was reasonable. But we disagree with the district court's conclusion that there is no genuine issue of material fact regarding whether DEA Agents used reasonable force against eleven-year-old B.S.A. and fourteen-year-old B.F.A. Accordingly, we affirm in part, reverse in part, and remand for further proceedings.

**BACKGROUND**

*A. DEA Agents Obtain a Search Warrant for the Avina Home*

On January 19, 2007, DEA Agents obtained a search warrant for the mobile home located at 1601 Drew Road, space #14, in Seeley, California. At the time the warrant was issued, DEA Agents believed that a vehicle belonging to suspected

drug trafficker Luis Alvarez was registered at the Avina residence. After executing the search warrant on January 20, 2007, the agents discovered they had inadvertently written down a license number of a vehicle belonging to Thomas Avina instead of a vehicle belonging to Luis Alvarez.

## B.   The January 20, 2007 Search of the Avina Home

Because this case comes to us on summary judgment in favor of the United States, we must view the record in the light most favorable to the Avinas, who are the non-moving parties. *Brown v. City of Los Angeles*, 521 F.3d 1238, 1240 (9th Cir. 2008) (per curiam). Many of the key facts that we will recite here are disputed, including the specific nature of the officers' actions toward the minor plaintiffs.

On the morning of January 20, 2007, Plaintiffs Thomas and Rosalie Avina and their daughters were asleep in their mobile home. At approximately 7:00 a.m., DEA Agents approached the front door of the home. The agents banged loudly on the front door and yelled "police." They waited briefly and then used a battering ram to break through the front door. The agents then entered the Avinas' home with their guns drawn.

Upon entering the Avina home, the agents first encountered Thomas and Rosalie Avina. Thomas was standing in an area between the living room and his bedroom, and Rosalie was lying on a couch in the living room. One of the agents approached Thomas and told Thomas to "get down on the [fuck]ing ground." Thomas told the agent that he was "making a mistake." After hearing Thomas's response, another agent "forcefully pushed" Thomas to the ground, pointed his gun at Thomas's face, and told Thomas, "Don't you [fuck]ing move." Both Thomas and Rosalie were placed in handcuffs. When Rosalie noticed agents approach the rooms of her daughters, Rosalie screamed at the agents, "Don't hurt my babies. Don't hurt my babies."

## 1. The Search of Fourteen-Year-Old B.F.A.'s Room

At the time of the search, fourteen-year-old B.F.A. was lying on her bed in her room. She heard a loud bang on the front door of the mobile home followed by shouts of "police, open up. Open up." B.F.A. then heard agents enter her home and shout at her father to "[g]et down on the ground." B.F.A. also heard the agents use profanity towards her father. Agents then entered fourteen-year-old B.F.A.'s room with their guns drawn.[1] The agents told B.F.A. to "[g]et down on the f[uck]ing ground." In response to the agents' commands, B.F.A. rolled off her bed. The agents then handcuffed B.F.A.

## 2. The Search of Eleven-Year-Old B.S.A.'s Room

At the time of the search, eleven-year-old B.S.A. was asleep in her room. Agents entered B.S.A.'s room with their guns drawn. The agents yelled at B.S.A. to "[g]et down on the f[uck]ing ground." B.S.A. initially refused to get down on the ground because she was "frozen in fear." The agents then pulled eleven-year-old B.S.A. to the ground and handcuffed her. After the agents handcuffed B.S.A., the agents pointed their guns at eleven-year-old B.S.A.'s head "like they were going to shoot [her]." The agents then picked up B.S.A. and moved her to B.F.A.'s room.

Once the agents transported B.S.A. to B.F.A.'s room, the agents forced eleven-year-old B.S.A. and fourteen-year-old B.F.A. to lie facedown on the ground with their hands cuffed behind their backs. B.S.A. and B.F.A. were forced to lie face-down with their hands cuffed behind their backs for "a while."

Sometime later, agents moved B.S.A. and B.F.A. into the

---

[1]One of the agents testified in his deposition that when he first encountered one of the girls, presumably B.F.A., she looked like she was "12 [or] 13 years old."

living room, with their hands still cuffed behind their backs. At this point, eleven-year-old B.S.A. began to cry because she could not find her father. At some point, B.S.A. noticed her father lying on the floor. According to B.S.A., the agents un-handcuffed her about thirty minutes after they first entered her bedroom.

*3.   Agents Leave the Avina Home*

The agents searched the Avina home for approximately two hours. At approximately 9:00 a.m., agents left the Avina home.

## STANDARD OF REVIEW

We review de novo the district court's grant of summary judgment. *FTC v. Stefanchik*, 559 F.3d 924, 927 (9th Cir. 2009). A party is entitled to summary judgment if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c) (2010).

In cases involving the reasonableness of force by law enforcement officers, "the reasonableness of force used is ordinarily a question of fact for the jury." *Liston v. Cnty. of Riverside*, 120 F.3d 965, 976 n.10 (9th Cir. 1997). "Because the excessive force inquiry nearly always requires a jury to sift through disputed factual contentions, and to draw inferences therefrom, we have held on many occasions that summary judgment or judgment as a matter of law in excessive force cases should be granted sparingly." *Glenn v. Washington Cnty.*, 673 F.3d 864, 871 (9th Cir. 2011) (brackets and internal quotation marks omitted). With these principles in mind, we turn to the facts of this case.

**DISCUSSION**

## I.   The Federal Tort Claims Act and California Law

The Avinas' complaint contains two tort claims against the United States Government under the FTCA. The Avinas allege claims for: (1) assault and battery; and (2) intentional infliction of emotional distress. Because the Avinas' tort claims are brought under the FTCA, and the events at issue occurred in California, we apply California tort law. *See Richards v. United States*, 369 U.S. 1, 7 (1962).

Under California law, to prevail on the tort of assault, the plaintiff must establish that: (1) the defendant threatened to touch the plaintiff in a harmful or offensive manner; (2) it reasonably appeared to the plaintiff that the defendant was about to carry out the threat; (3) the plaintiff did not consent to the defendant's conduct; (4) the plaintiff was harmed; and (5) the defendant's conduct was a substantial factor in causing the plaintiff's harm. Judicial Council of Cal., Civil Jury Instructions No. 1301 ("Assault") (2012); *Tekle v. United States*, 511 F.3d 839, 855 (9th Cir. 2007) (defining civil assault under California law).[2]

To prevail on a claim of battery under California law, a plaintiff must establish that: (1) the defendant touched the plaintiff or caused the plaintiff to be touched with the intent to harm or offend the plaintiff; (2) the plaintiff did not consent to the touching; (3) the plaintiff was harmed or offended by defendant's conduct; and (4) a reasonable person in plaintiff's situation would have been offended by the touching. Judicial Council of Cal., Civil Jury Instructions No. 1300 ("Battery")

---

[2]An assault also can occur under California law when a defendant "attempts" a battery. *See* Judicial Council of Cal., Civil Jury Instructions No. 1301 ("Assault") (2012); 5 B.E. Witkin, Summary of Cal. Law, Torts § 381, p. 598 (10th ed. 2005)

(2012); *Ashcraft v. King*, 278 Cal. Rptr. 900, 903-04 (Ct. App. 1991) (defining civil battery under California law).[3]

To prevail on a claim of intentional infliction of emotional distress under California law, a plaintiff must establish: "(1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by the defendant's outrageous conduct." *Hughes v. Pair*, 209 P.3d 963, 976 (Cal. 2009) (internal quotation marks omitted).

In addition, because the Avinas' claims concern the conduct of peace officers acting in their official capacities, the Avinas must also establish, for each cause of action, that the officers used "unreasonable force." *Munoz v. City of Union City*, 16 Cal. Rptr. 3d 521, 539 (Ct. App. 2004). In California, "[c]laims that police officers used excessive force in the course of an arrest, investigatory stop or other seizure of a free citizen are analyzed under the reasonableness standard of the Fourth Amendment to the United States Constitution." *Id.* (internal quotation marks omitted). It is this last element — the "unreasonable force" element — that the parties dispute.

## II.   Assault and Battery

In granting summary judgment in favor of the United States on the Avinas' assault and battery claim, the district court concluded that there was no genuine issue of material fact regarding whether agents used excessive force. In reaching this conclusion, the district court relied extensively on the Supreme Court's decision in *Muehler v. Mena*, 544 U.S. 93 (2005).

---

[3]"In an action for civil battery the element of intent is satisfied if the evidence shows [the] defendant acted with a willful disregard of the plaintiff's rights." *Ashcraft*, 278 Cal. Rptr. at 904 (internal quotation marks omitted).

In *Mena*, police officers executed a search warrant for weapons at the home of a suspected gang member. *Id*. at 95-96. The officers detained plaintiff Iris Mena in handcuffs during the course of the search. *Id*. at 96. Mena brought suit under 42 U.S.C. § 1983 against the officers who executed the search warrant. *Id*. at 95. Specifically, Mena claimed that she was "detained for an unreasonable time and in an unreasonable manner in violation of the Fourth Amendment" because officers placed her in handcuffs during the course of the search. *Id*. at 96, 100 (internal quotation marks omitted). The Supreme Court rejected Mena's argument. *Id*. at 102. The Court concluded that "[t]he officers' use of force in the form of handcuffs to effectuate Mena's detention . . . was reasonable because the governmental interests outweigh[ed] the marginal intrusion." *Id*. at 99. The Court explained that, because the search for weapons at the home made the search "inherently dangerous," the use of handcuffs was reasonable because it "minimize[d] the risk of harm to both officers and occupants." *Id*. at 100.

**[1]** Under *Mena*, the agents' use of force against Thomas and Rosalie was reasonable. The agents were executing a search warrant at the residence of a suspected drug trafficker. Because this scenario presented an "inherently dangerous" situation for the agents, the use of handcuffs on the adult members of the Avina family was reasonable as it "minimize[d] the risk of harm to both officers and occupants." *Id*. at 100.

**[2]** The agents also did not act unreasonably when they "forcefully pushed" Thomas Avina to the ground during the initial minutes of the search. At the time of the forceful push, Thomas was refusing to follow the agents' commands to get down on the ground. This refusal occurred during the agents' initial entry into the home, at a time when the agents had no way of knowing whether Thomas was associated with, or even was, suspected drug trafficker Luis Alvarez. Given the circumstances confronting the agents at the time — an adult man who was refusing to follow the agents' instructions dur-

ing the initial minutes of the execution of an "inherently dangerous" warrant — we cannot say that the agents acted unreasonably. *See*, *e.g.*, *Michigan v. Summers*, 452 U.S. 692, 702 (1981) (noting that "the execution of a warrant to search for narcotics is the kind of transaction that may give rise to sudden violence or frantic efforts to conceal or destroy evidence").[4]

  **[3]** The same, however, cannot be said for the agents' actions toward the minor children, when the record is viewed

---

[4]The Avinas argue in passing that the agents used unreasonable force because they went to the "wrong house." Specifically, the Avinas note that, although the warrant authorized a search of 1601 Drew Road, space #14, this was not the residence where the vehicle of suspected drug trafficker Luis Alvarez was registered. This argument fails. Because we must look to Fourth Amendment case law when conducting the "unreasonable force" inquiry, *see Munoz*, 16 Cal. Rptr. 3d at 539, we apply the well-established Fourth Amendment "good faith" rule from *United States v. Leon*, 468 U.S. 897 (1984). Under *Leon*'s "good faith" rule, the agents who entered the Avina home were entitled to rely on the search warrant unless: (1) "the magistrate or judge in issuing a warrant was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard for the truth"; (2) "the issuing magistrate wholly abandoned his judicial role"; (3) the warrant was "based on an affidavit so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable"; or (4) the warrant failed to "particularize the place to be searched or the things to be seized." 468 U.S. at 923 (internal quotation marks omitted); *see also Messerschmidt v. Millender*, 132 S. Ct. 1235, 1245 (2012) (applying *Leon*'s "good faith" rule in civil rights lawsuit against police officers). Here, there is no basis for finding any of the exceptions to *Leon*'s good faith rule. There is no basis for concluding that the warrant was based on a false affidavit or an affidavit "lacking in indicia of probable cause" because the affidavit supporting the warrant is not in the record. The Avinas' failure to include the warrant affidavit in the record is fatal to any argument that the agents made false statements in the warrant affidavit or that the affidavit was lacking in indicia of probable cause. *See Messerschmidt*, 132 S. Ct. at 1245 n.2. There is likewise no basis for finding that "the issuing magistrate wholly abandoned his judicial role" or that the warrant failed to "particularize the place to be searched or the things to be seized." *Leon*, 468 U.S. at 923 (internal quotation marks omitted)

in the light most favorable to them. *Mena* involved the use of force against an *adult*. Here, by contrast, a jury could find that the agents pointed their guns at the head of an eleven-year-old girl, "like they were going to shoot [her]," while she lay on the floor in handcuffs, and that it was excessive for them to do so.[5] Similarly, a jury could find that the agents' decision to force the two girls to lie face down on the floor with their hands cuffed behind their backs was unreasonable.[6] Under our case law, an issue of material fact exists as to whether the actions of the agents were excessive in light of the ages of B.S.A. (age eleven) and B.F.A. (age fourteen) and the limited threat they posed. *See Tekle*, 511 F.3d 839 (holding that officers were not entitled to summary judgment on excessive force claim where officers pointed guns at an eleven-year-old boy's head during the arrest of the boy's father); *Motley v. Parks*, 432 F.3d 1072, 1089 (9th Cir. 2005) (en banc) (holding that officer's act of pointing a gun at an infant during the search of a gang member's house was objectively unreasonable); *see also McDonald ex rel. McDonald v. Haskins*, 966 F.2d 292, 294-95 (7th Cir. 1992) (holding that officer's act of pointing his gun at a nine-year-old's head during the search of home was excessive use of force). Accordingly, we reverse the district court's grant of summary judgment in favor of the United States on B.F.A.'s and B.S.A.'s claims for assault and battery.

---

[5]"The pointing of a gun at another in a threatening manner" can constitute an assault under California law. *Lowry v. Standard Oil Co. of Cal.*, 146 P.2d 57, 60 (Cal. Ct. App. 1944).

[6]Although there is evidence that the agents released the girls from their handcuffs once they realized how young they were, there is also evidence that the agents knew, prior to entering the girls' bedrooms, that the girls were children. Rosalie testified that, as the agents were heading towards the girls' rooms, she screamed at the agents several times, "Don't hurt my babies." Moreover, one of the agents testified at his deposition that, when he first saw one of the girls (presumably the older of the two girls), she appeared to be "12 [or] 13 years old."

## III.    Intentional Infliction of Emotional Distress

In granting summary judgment in favor of the United States on the Avinas' claims for intentional infliction of emotional distress, the district court concluded that, because the agents used "reasonable" force, the Avinas were unable to establish that DEA Agents engaged in "extreme or outrageous" conduct. We disagree.

**[4]** Viewing the evidence in the light most favorable to the Avinas, a rational trier of fact could find that agents engaged in "extreme or outrageous" conduct when the agents: (1) pointed their guns at the head of eleven-year-old B.S.A. "like they were going to shoot [her]" while B.S.A. was lying on the floor in handcuffs; (2) forced eleven-year-old B.S.A. and fourteen-year-old B.F.A. to lie face down on the floor with their hands cuffed behind their backs; (3) left B.S.A. and B.F.A. in handcuffs for half an hour; and (4) yelled at eleven-year-old B.S.A. and fourteen-year-old B.F.A. to "[g]et down on the f[uck]ing ground." *See Tekle*, 511 F.3d at 856 (holding that officers were not entitled to summary judgment on claim for intentional infliction of emotional distress where officers pointed guns at eleven-year old's head during the arrest of the eleven-year-old's father); *see also id.* at 859 (Fisher, J., concurring). Accordingly, we reverse the district court's grant of summary judgment in favor of the United States on B.F.A.'s and B.S.A.'s claims for intentional infliction of emotional distress.[7]

---

[7]As previously discussed, we agree with the district court that there is no genuine issue of material fact regarding whether agents used excessive force against the adult members of the Avina family (Thomas and Rosalie). Accordingly, the district court did not err in granting summary judgment in favor of the United States on Thomas's and Rosalie's claims for intentional infliction of emotional distress.

## CONCLUSION

The district court's grant of summary judgment in favor of the United States on the claims of Thomas Avina and Rosalie Avina is AFFIRMED. The district court's grant of summary judgment in favor of the United States on the claims of B.S.A. and B.F.A. is REVERSED. We REMAND this case to the district court for proceedings consistent with this opinion. The parties shall bear their own costs on appeal.

**AFFIRMED in part, REVERSED in part, and REMANDED.**