

# COURT OF APPEALS
### SECOND DISTRICT OF TEXAS
### FORT WORTH

### NO. 02-13-00069-CR
### NO. 02-13-00070-CR

KENDRAE AMEIN MONTEZ                                    APPELLANT

V.

THE STATE OF TEXAS                                          STATE

----------

### FROM THE 213TH DISTRICT COURT OF TARRANT COUNTY
### TRIAL COURT NO. 1279590D
### TRIAL COURT NO. 1279592D
----------

## MEMORANDUM OPINION[1]

----------

In four points that collectively concern the trial court's decision to deny his motion to suppress evidence and one point that concerns the trial court's decision to deny his motion for a directed verdict,[2] appellant Kendrae Amein

---

[1]See Tex. R. App. P. 47.4.

[2]Appellant raises his fifth point only in cause number 02-13-00070-CR, the appeal related to his conviction for possessing while intending to deliver heroin.

Montez appeals his first-degree-felony convictions for possession with intent to deliver cocaine and heroin, each of four grams or more but less than two hundred grams.[3] We affirm.

**Background Facts**

In April 2012, Grand Prairie Police Department (GPPD) Detective James Edwards watched a confidential informant make a controlled drug buy at an apartment on East Park Row in Arlington.[4] The police obtained a no-knock search warrant for the apartment. Appellant was not a named person in the search warrant, but Detective Edwards informed his team that appellant, from whom the confidential informant had previously bought drugs, could likely be at the apartment.

Upon arriving at the apartment, Detective Edwards saw a green vehicle that was involved in another investigation with appellant, and he alerted a sergeant of the possibility that appellant was at the apartment. As the officers approached the apartment, which was located on the second floor of the complex, they noticed appellant standing on the landing outside the front door. One other person was also standing outside with appellant and another had his

---

[3]*See* Tex. Health & Safety Code Ann. §§ 481.102(2), (3)(D), .112(a), (d) (West 2010).

[4]The GPPD had previously used the same confidential informant, who was found reliable.

head out of the doorway. The three people were talking, and the person inside the threshold was the target of the warrant.

Upon seeing appellant and the others near the doorway, GPPD Detective Pete Amaral told them they were being detained and placed them in handcuffs. Once they were detained, the three were immediately patted down for weapons. Detective Amaral discovered a small, closed black box in appellant's back pocket. Believing that the box might contain an "after-market . . . stun gun," Detective Amaral gave it to Detective Edwards. The search of the apartment lasted, according to Detective Edwards, between an hour and an hour and a half.

In that timeframe, after discovery of an outstanding warrant for appellant, he was placed under arrest. After the police confirmed the warrant, they opened the box and found narcotics inside. The police took appellant to a detention center in Dallas County, where he dropped more drugs into a bin upon being strip-searched. The strip-search also revealed several pills in appellant's possession.

A grand jury indicted appellant with four charges, including possession with intent to deliver cocaine and heroin. On federal and state grounds, appellant filed a motion to suppress evidence of the drugs that the police found, but after a hearing, the trial court overruled the motion, citing officer safety concerns and information that the police possessed concerning appellant based upon his previous sale of drugs.

3

Appellant pled not guilty to all counts. A jury found him guilty of possession with intent to deliver heroin and cocaine, each four grams or more, but less than two hundred grams, and the trial court sentenced him to twenty-five years' confinement on each conviction, to be served concurrently. Appellant brought these appeals.

## The Propriety of the Detention and Frisk of Appellant

In appellant's first four points, he argues that the trial court erred by overruling his motion to suppress in violation of article 1, sections 9, 10, and 19 of the Texas constitution; articles 18.22 and 38.23 of the code of criminal procedure; and the Fourth, Fifth, and Fourteenth Amendments of the United States Constitution.[5] Appellant contends that officers lacked reasonable suspicion to support his detention and that without that detention, he would not have been searched, and the heroin and cocaine would not have been found.

We review a trial court's ruling on a motion to suppress under a bifurcated standard of review. *Amador v. State*, 221 S.W.3d 666, 673 (Tex. Crim. App. 2007); *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). We give almost total deference to a trial court's rulings on questions of historical fact and application-of-law-to-fact questions that turn on an evaluation of credibility and

---

[5]Appellant has not, at trial or on appeal, separately argued federal and state constitutional or statutory grounds nor suggested that the state constitution or statutes provide greater protection than his federal constitutional claim. We will analyze the points as one argument. *See Reed v. State*, 308 S.W.3d 417, 419 n.3 (Tex. App.—Fort Worth 2010, no pet.).

demeanor, but we review de novo application-of-law-to-fact questions that do not turn on credibility and demeanor. *Amador*, 221 S.W.3d at 673; *Estrada v. State*, 154 S.W.3d 604, 607 (Tex. Crim. App. 2005); *Johnson v. State*, 68 S.W.3d 644, 652–53 (Tex. Crim. App. 2002).

When the record is silent on the reasons for the trial court's ruling, we imply the necessary fact findings that would support the ruling if the evidence, viewed in the light most favorable to the ruling, supports those findings. *State v. Garcia-Cantu*, 253 S.W.3d 236, 241 (Tex. Crim. App. 2008); *see Wiede v. State*, 214 S.W.3d 17, 25 (Tex. Crim. App. 2007). We then review the trial court's legal ruling de novo unless the implied fact findings supported by the record are also dispositive of the legal ruling. *State v. Kelly*, 204 S.W.3d 808, 819 (Tex. Crim. App. 2006). We must uphold the trial court's ruling if it is supported by the record and correct under any theory of law applicable to the case. *State v. Stevens*, 235 S.W.3d 736, 740 (Tex. Crim. App. 2007); *Armendariz v. State*, 123 S.W.3d 401, 404 (Tex. Crim. App. 2003), *cert. denied*, 541 U.S. 974 (2004).

The Fourth Amendment protects against unreasonable searches and seizures by government officials. U.S. Const. amend. IV. To suppress evidence because of an alleged Fourth Amendment violation, the defendant bears the initial burden of producing evidence that rebuts the presumption of proper police conduct. *Amador*, 221 S.W.3d at 672; *see Young v. State*, 283 S.W.3d 854, 872 (Tex. Crim. App.), *cert. denied*, 558 U.S. 1093 (2009). A defendant satisfies this burden by establishing that a search or seizure occurred without a warrant.

5

*Amador*, 221 S.W.3d at 672. Once the defendant makes this showing, the burden of proof shifts to the State to establish that the search or seizure was reasonable. *Id.* at 672–73; *Torres v. State*, 182 S.W.3d 899, 902 (Tex. Crim. App. 2005); *Ford v.State*, 158 S.W.3d 488, 492 (Tex. Crim. App. 2005).

The State contends in part, relying on the Supreme Court's decision in *Michigan v. Summers*, that the police lawfully detained appellant because he was "in the immediate vicinity of the apartment . . . talking to the drug dealer described in the no-knock narcotics warrant." 452 U.S. 692, 101 S. Ct. 2587 (1981). In *Summers*, just before police officers began executing a warrant at a house to search for narcotics, they saw Summers descending from the front steps, requested his assistance in entering the home, detained him, and eventually found heroin in his coat pocket. *Id.* at 693, 101 S. Ct. at 2589. Summers argued that his initial detention violated his Fourth Amendment rights. *Id.* at 694, 101 S. Ct. at 2589. The Supreme Court held that the police had not violated Summers's rights, explaining:

> Of prime importance in assessing the intrusion is the fact that the police had obtained a warrant to search respondent's house for contraband. A neutral and detached magistrate had found probable cause to believe that the law was being violated in that house and had authorized a substantial invasion of the privacy of the persons who resided there. The detention of one of the residents while the premises were searched, although admittedly a significant restraint on his liberty, was surely less intrusive than the search itself. . . .
>
> In assessing the justification for the detention of an occupant of premises being searched for contraband pursuant to a valid warrant, both the law enforcement interest and the nature of the "articulable facts" supporting the detention are relevant. Most

6

obvious is the legitimate law enforcement interest in preventing flight in the event that incriminating evidence is found. Less obvious, but sometimes of greater importance, is the interest in minimizing the risk of harm to the officers. Although no special danger to the police is suggested by the evidence in this record, the execution of a warrant to search for narcotics is the kind of transaction that may give rise to sudden violence or frantic efforts to conceal or destroy evidence. The risk of harm to both the police and the occupants is minimized if the officers routinely exercise unquestioned command of the situation. Finally, the orderly completion of the search may be facilitated if the occupants of the premises are present. . . .

. . . .

. . . If the evidence that a citizen's residence is harboring contraband is sufficient to persuade a judicial officer that an invasion of the citizen's privacy is justified, it is constitutionally reasonable to require that citizen to remain while officers of the law execute a valid warrant to search his home. Thus, for Fourth Amendment purposes, we hold that a warrant to search for contraband founded on probable cause implicitly carries with it the limited authority to detain the occupants of the premises while a proper search is conducted.

*Id.* at 701–05, 101 S. Ct. 2593–95 (footnotes and citation omitted). When the

Supreme Court recently circumscribed the rule in *Summers*, it emphasized that

detentions "incident to the execution of a search warrant are reasonable under

the Fourth Amendment because the limited intrusion on personal liberty is

outweighed by the special law enforcement interests at stake"; the Court stated,

however, that the rule applies only when the detainee is in the immediate vicinity

of the premises to be searched. *Bailey v. United States*, 133 S. Ct. 1031, 1042–

43 (2013); *see also Muehler v. Mena*, 544 U.S. 93, 98, 125 S. Ct. 1465, 1470

(2005) ("Mena's detention for the duration of the search was reasonable under

*Summers* because a warrant existed to search [a residence] and she was an

7

occupant of that address at the time of the search.").[6]   The Court also listed several factors to determine if the occupant is within the "immediate vicinity," such as the lawful limits of the premises, whether the occupant was within the line of sight of the dwelling, and the ease of reentry from the occupant's location. *Bailey*, 133 S. Ct. at 1042.

We recently recognized, citing *Summers* and *Bailey*, that even when police officers do not have reasonable suspicion, or any suspicion, that a particular individual has been involved in criminal activity, they may detain that individual incident to the execution of a proper search warrant as long as the individual is found within or immediately outside a residence at the moment the officers execute the warrant.[7]   *Shed v. State*, No. 02-12-00229-CR, 2013 WL 3064554, at

---

[6]In *Summers*, the Court emphasized that the rule from that case does not depend on an ad hoc determination about the "extent of the intrusion" caused by the seizure or the quantum of proof justifying the detention.  452 U.S. at 705 n.19, 101 S. Ct. at 2595 n.19.

[7]Thirty years ago, the court of criminal appeals, resolving federal constitutional arguments, held *Summers* did not apply when the defendant arrived at a residence several minutes after the execution of a warrant.  *Lippert v. State*, 664 S.W.2d 712, 715, 720–21 (Tex. Crim. App. 1984).  Appellant was present at the moment of the warrant's execution, so *Lippert* is factually distinguishable.

Although *Lippert* appeared to interpret *Summers* as applying only to people who have "control" over or residence in premises subject to a search warrant, decisions after *Lippert*, interpreting the same federal constitutional provisions, have clarified that *Summers* authorizes the detention of all individuals present within the immediate vicinity of a residence at the time the warrant is executed.  *See id.* at 720; *see also Bailey*, 133 S. Ct. at 1039–42 (distinguishing between an "occupant" and a "resident," focusing on the spatial relationship of the defendant to the premises, and "confin[ing] the *Summers* rule to *those who*

8

*4–5 (Tex. App.—Fort Worth June 20, 2013, no pet.) (mem. op., not designated for publication).  Likewise, other Texas courts have applied *Summers* to uphold temporary detentions that are incident to the execution of search warrants.  *See Morrison v. State*, 132 S.W.3d 37, 41, 43–44 (Tex. App.—Houston [14th Dist.] 2004, pets. ref'd) (upholding a detention under *Summers* when the police ordered the defendant to lay on the floor and handcuffed him while they

---

*are present* when and where the search is being conducted" (emphasis added)); *id.* at 1043 (Scalia, J., concurring) ("[Summers] applies only to seizures of 'occupants'—that is, persons within 'the immediate vicinity of the premises to be searched.'"); *United States v. Martinez-Cortes*, 566 F.3d 767, 770 (8th Cir. 2009) ("[The] authority to forcibly detain during the warrant search extends to all occupants of the premises, not just the owner or the subject of the warrant."); *United States v. Sanchez*, 555 F.3d 910, 918 (10th Cir.) (distinguishing "occupant" from "resident" and noting that an "occupant could be anyone present on the premises, such as a visitor or even a salesperson"), *cert. denied*, 556 U.S. 1145 (2009); *United States v. Davis*, 530 F.3d 1069, 1080 (9th Cir. 2008) (rejecting attempts to "distinguish *Summers* based on the fact[] that a detainee has no ownership interest in the property being searched"); *United States v. Cavazos*, 288 F.3d 706, 711 (5th Cir.) (applying *Summers* to an "occupant" although the police did not know whether he was a "resident"), *cert. denied*, 537 U.S. 910 (2002); *United States v. Fountain*, 2 F.3d 656, 663 (6th Cir.) ("[W]e conclude that the district court correctly rejected McEaddy's argument that the Supreme Court intended that the rule in *Summers* apply only to 'residents.'"), *cert. denied*, 510 U.S. 1014 (1993); *United States v. Pace*, 898 F.2d 1218, 1238–39 (7th Cir.) (applying *Summers* when the detainees were not residents), *cert. denied*, 497 U.S. 1030 (1990).

   Principal justifications for the rule in *Summers*—minimizing the risk of sudden violence when executing a warrant by taking "unquestioned command" and preventing destruction of evidence or distraction of officers—would be thwarted by a rule that requires the police to determine occupants' residency before detaining them.  *See* 452 U.S. at 702–03, 101 S. Ct. at 2594; *see also Bailey*, 133 S. Ct. at 1040; *Fountain*, 2 F.3d at 663 ("[C]oncerns [for officers' safety and preventing the disposal of evidence] are the same regardless of whether the individuals present in the home . . . are residents or visitors.").

performed a search); *see also Dixon v. State*, 206 S.W.3d 613, 619 n.24 (Tex. Crim. App. 2006) (citing *Muehler* and recognizing that it is "well-established that when officers have probable cause to search a person or location, they may temporarily detain *those persons or others* who arrive during the search" (emphasis added)); *Babalola v. State*, No. 10-09-00234-CR, 2011 WL 1419752, at *4 (Tex. App.—Waco Apr. 13, 2011, pet. ref'd) (mem. op., not designated for publication); *Davis v. State*, No. 01-98-00967-CR, 2000 WL 1593794, at *2 (Tex. App.—Houston [1st Dist.] Oct. 26, 2000, pet. ref'd) (not designated for publication) ("When a search warrant is executed, a person who is an occupant of the premises may be detained for the duration of the search."); *Owens v. State*, No. 05-96-01075-CR, 1998 WL 331564, at *2 (Tex. App.—Dallas June 24, 1998, no pet.) (not designated for publication) (stating the rule in *Summers* and adding that "[o]nce an officer has validly detained an individual, the officer may conduct a limited protective search for weapons if he has a reasonable fear for his safety").

The evidence in this case establishes that as officers ascended the stairs and approached the apartment, they saw appellant and two other people on the landing directly in front of the apartment's door. To execute the search warrant and for officer safety concerns, the three people were handcuffed and detained in a fairly close area.[8] Each individual was told that he was not being arrested but

---

[8]Appellant was detained about ten to twenty feet away from the front door. Detective Edwards explained that typically in executing search warrants, GPPD

10

only detained for the officers' safety. The officers arrested appellant only after discovering an outstanding warrant. We conclude that the rule the Supreme Court established in *Summers* and repeated and clarified in *Bailey* justified the police's temporary detention of appellant because he was standing directly in front of the apartment's door and talking with the target of the warrant, putting him within the immediate vicinity of the premises. *See Bailey*, 133 S. Ct. at 1037–38, 1042; *Summers*, 452 U.S. at 704–05, 101 S. Ct. at 2595.

On appeal, appellant does not cite *Summers* or *Bailey* or recognize the suspicion-independent rule stemming from those cases.[9] He contends, however, that his detention constituted a formal arrest because he followed the officers' admonitions, did not interfere with the execution of the search warrant, lacked movement, and was placed in handcuffs for approximately an hour and a half. But even in such situations, the *Summers* rule has been applied. For example, in *Muehler*, the Court held that a detention was "plainly permissible" under *Summers*'s "categorical" rule when the police handcuffed an occupant at gunpoint and isolated her within a garage while conducting an hours-long search. 544 U.S. at 95–98, 125 S. Ct. at 1468–70. The Court stressed that officers' "use of force in the form of handcuffs to effectuate [the detainee's] detention in the

officers detain people that have direct access to apartments that are being searched.

[9]Instead, appellant mainly focuses on whether the police could detain him under *Terry v. Ohio* based on reasonable suspicion that he had engaged in criminal activity. *See* 392 U.S. 1, 27, 88 S. Ct. 1868, 1883 (1968).

11

garage . . . was reasonable because the governmental interests outweigh the marginal intrusion." *Id.* at 99, 125 S. Ct. at 1470. Although the search in *Muehler* was for weapons, the Court relied on *Summers*, which recognized that a search for drugs may "give rise to sudden violence or frantic efforts to conceal or destroy evidence." *Id.* at 100, 125 S. Ct. at 1471 (citing *Summers*, 452 U.S. at 702, 101 S. Ct. at 2594); *see Richards v. Wisconsin*, 520 U.S. 385, 391 n.2, 117 S. Ct. 1416, 1420 n.2 (1997) (recognizing the "link[] between drugs and violence").

Similarly, the Tenth Circuit upheld the detention in *Sanchez*, when a warrant was issued to search for drugs and drug paraphernalia, although the defendant was detained, placed on the ground, and handcuffed for one hour while a search was conducted. 555 F.3d at 912, 915–19; *see also Marcilis v. Twp. of Redford*, 693 F.3d 589, 599 (6th Cir. 2012) (recognizing the "dangers inherent in narcotics-related searches" and holding that "officers conducting residential searches may detain individuals in handcuffs and display firearms where the officers have a justifiable fear of personal safety"); *Avina v. United States*, 681 F.3d 1127, 1131–32 (9th Cir. 2012) (holding that police officers did not act unreasonably when, in executing a search warrant for a drug trafficker, they forced an occupant of a home to the ground and handcuffed adults in the home).

Similar to the cases cited above, we conclude that in this case, the governmental interests described in *Summers* and its progeny outweighed the minimal intrusion related to appellant's detention, that the acts involved in

detaining appellant during the length of the search (amounting to handcuffing, sitting, and waiting) were objectively reasonable under the circumstances and were not excessively forceful, and that the detention did not constitute an arrest. *See Los Angeles Cnty. v. Rettele*, 550 U.S. 609, 614, 127 S. Ct. 1989, 1992 (2007) (applying *Summers* and explaining that the "test of reasonableness under the Fourth Amendment is an objective one.").[10]

Likewise, we also conclude that the frisk of appellant was authorized. Assuming that reasonable suspicion of criminal activity and a danger to the officers was required for the frisk,[11] the facts warranted such suspicion. *See Wade v. State*, 422 S.W.3d 661, 669 (Tex. Crim. App. 2013) (explaining that if an "officer is justified in believing that a person whose suspicious behavior he is investigating is armed, he may frisk that person to determine if the suspect is, in fact, carrying a weapon and, if so, to neutralize the threat of physical harm"). The evidence establishes that the police had obtained the search warrant for the apartment based on a confidential informant's controlled purchase of drugs there; that the police were executing the warrant on a no-knock basis because of their

---

[10]Like in *Rettele*, the detention here was "shorter . . . than the 2- to 3-hour handcuff detention upheld in [*Muehler*]." 550 U.S. at 615, 127 S. Ct. at 1993.

[11]Citing *Ybarra v. Illinois*, 444 U.S. 85, 92–93, 100 S. Ct. 338, 343 (1979), the court in *Lippert* concluded that a frisk cannot be merely justified by a defendant's presence at the premises where a warrant is executed. *See* 664 S.W.2d at 719–22; *see also Denver Justice & Peace Comm., Inc. v. City of Golden*, 405 F.3d 923, 929–31 (10th Cir. 2005) (holding that while *Summers* supports a categorical authority to detain, it does not automatically permit a frisk).

13

belief that weapons could be present;[12] that Detective Edwards had been informed that appellant had previously sold drugs to a confidential informant; that the warrant was executed in a high-crime area; that upon the officers' arrival, they saw appellant talking with the person from whom the confidential informant had purchased drugs at the apartment; and that Detective Edwards and Detective Amaral knew from training and experience that the presence of guns typically connects with narcotics activity. *Cf. Carmouche v. State*, 10 S.W.3d 323, 330 (Tex. Crim. App. 2000); *Wilson v. State*, 132 S.W.3d 695, 698 (Tex. App.—Amarillo 2004, pet. ref'd) ("[T]hat weapons and violence are associated with the drug trade is rather settled. Thus, encountering one who is reasonably suspected of engaging in drug activity can justify a brief and minimally intrusive frisk of his person." (citation omitted)).

Although appellant did not display weapons, a police officer's belief that a suspect is armed may be predicated on the nature of the suspected criminal activity. *Morris v. State*, 195 S.W.3d 740, 745 (Tex. App.—Amarillo 2006, pet. ref'd). Because weapons are closely associated with drug dealing, a reasonable suspicion that a suspect is dealing drugs supports a reasonable inference that the suspect is armed. *Id.* (citing *Carmouche*, 10 S.W.3d at 330).

---

[12]Detective Edwards and Detective Amaral testified that when they decide whether to seek a no-knock warrant, they consider the likely presence of weapons at the location to be searched. Appellant does not challenge the factual basis of the no-knock warrant.

14

Because we hold that the principles discussed in *Summers* and in *Bailey* justified the officers' temporary detention of appellant while they executed the search warrant and that they were justified in frisking him based on their reasonable suspicion that he was engaging in criminal activity and was dangerous, we conclude that the trial court did not err by denying his motion to suppress.[13] We overrule his first four points.

## Venue

In appellant's fifth point in cause number 02-13-00070-CR, he contends that the trial court erred when it overruled his motion for directed verdict because there was insufficient evidence to prove venue in Tarrant County. The county in which the offense was committed is the proper venue for the prosecution. Tex. Code Crim. Proc. Ann. art. 13.18 (West 2005). Venue is not an element of the offense and must be proved only by a preponderance of the evidence, whether direct or circumstantial. *Id.* art. 13.17 (West 2005); *Holdridge v. State*, 707 S.W.2d 18, 22 n.4 (Tex. Crim. App. 1986); *see also Rippee v. State*, 384 S.W.2d 717, 718 (Tex. Crim. App. 1964) (explaining that a venue determination will be upheld "if from the evidence the jury may reasonably conclude that the offense was committed in the county alleged"); *Dewalt v. State*, 307 S.W.3d 437, 457

---

[13]Therefore, we decline to address whether the police's detention of appellant at the apartment could also appropriately be based on reasonable suspicion of his criminal activity. *See* Tex. R. App. P. 47.1; *Smith v. State*, 316 S.W.3d 688, 700 n.2 (Tex. App.—Fort Worth 2010, pet. ref'd).

15

(Tex. App.—Austin 2010, pet. ref'd) ("The trier of fact may make reasonable inferences from the evidence to decide the issue of venue.").

Appellant contends that because the heroin was found in a property bin at the jail located in Dallas County, the evidence is insufficient to prove that he possessed the heroin in any other county. However, we conclude that the State proved by a preponderance of the evidence that appellant possessed the heroin in Tarrant County. Appellant does not challenge his overall possession of the heroin. The record shows that he was arrested in Tarrant County, and there is no evidence in the record to raise the possibility that he obtained the heroin after his arrest but before he arrived at the jail. Thus, we hold that the State sufficiently proved venue, and we overrule appellant's fifth point.

## Conclusion

Having overruled each of appellant's points, we affirm the trial court's judgments.

/s/ Terrie Livingston

TERRIE LIVINGSTON
CHIEF JUSTICE

PANEL: LIVINGSTON, C.J.; MCCOY and MEIER, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED: July 17, 2014